IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JOSEPH FIUMANO, for himself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) Case No. _____ |
| v. | ) ) |
| METRO DINER MANAGEMENT LLC, METRO SERVICES LLC, CONSUL HOSPITALITY GROUP LLC, JOHN DAVOLI SR., JOHN DAVOLI JR. and MARK DAVOLI, | ) ) ) **JURY TRIAL DEMANDED** ) ) ) |
| Defendants. | ) ) |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Joseph Fiumano ("Plaintiff"), by and through his undersigned attorneys, hereby makes the following allegations against Metro Diner Management LLC, Metro Services LLC, Consul Hospitality Group LLC, John Davoli Sr., John Davoli Jr. and Mark Davoli (collectively "Defendants") concerning his acts and status upon his actual knowledge and concerning all other matters upon information, belief and the investigation of his counsel:

## NATURE OF THE ACTION

1. Plaintiff brings this action to redress Defendants' companywide violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq.* ("PMWA") and the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* ("PWPCL").

2. Plaintiff brings his FLSA claim on a collective basis pursuant to 29 U.S.C. § 216(b) for all people who worked as Metro Diner Servers in any state during the maximum limitations period (the "FLSA collective").

1

3. Plaintiff brings his PMWA and PWPCL claims on a class action basis pursuant to Fed. R. Civ. P. 23 for all people who worked as a Metro Diner Server in Pennsylvania since February 1, 2014 (the "Pennsylvania Class").

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §§ 1331.

5. This Court has supplemental jurisdiction over Plaintiff's Pennsylvania claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

7. Plaintiff is an individual who resides in Philadelphia, PA. Plaintiff has worked for Defendants as a Server in their restaurants in Orlando, FL (December 1, 2015 to October 2016) and Bensalem, PA (November 2, 2016 to present). Since December 1, 2015, Plaintiff has worked between 23 and 48 hours per week for Defendants, including about 20 weeks of 40 hours or more. Mr. Fiumano is personally familiar with, and has been personally affected by, the policies and practices described in this Complaint.

8. Metro Diner Management LLC is a corporation incorporated in the State of Florida that owns and operates Metro Diner restaurants in Bensalem, PA and York, PA and, as of the date of this filing, at least 18 more Metro Diner restaurants in Florida (12), Georgia (1), Indiana (3) and North Carolina (2).

9. Metro Services LLC is a corporation incorporated in the State of Florida that owns and operates Metro Diner restaurants in Bensalem, PA and York, PA and, as of the date of this filing, at least 18 more Metro Diner restaurants in Florida (12), Georgia (1), Indiana (3) and North Carolina (2).

10. Consul Hospitality Group LLC is a corporation incorporated in the State of Florida that owns and operates Metro Diner restaurants in Bensalem, PA and York, PA and, as of the date of this filing, at least 18 more Metro Diner restaurants in Florida (12), Georgia (1), Indiana (3) and North Carolina (2).

11. John Davoli, Sr. is a co-owner and operator of Metro Diner and the entities named in this Complaint. During the relevant period, John Davoli, Sr. has been involved in the day-to-day business operation of Metro Diner, exercised operational control over Metro Diner and controlled significant business functions of Metro Diner, including: determining employee salaries, making hiring decisions, controlling corporate checking and payroll accounts and acting for Metro Diner to devise, direct, implement and supervise the wage and hour policies and practices challenged in this action.

12. John Davoli, Jr. is a co-owner and operator of Metro Diner and the entities named in this Complaint. During the relevant period, John Davoli, Jr. has been involved in the day-to-day business operation of Metro Diner, exercised operational control over Metro Diner and controlled significant business functions of Metro Diner, including: determining employee salaries, making hiring decisions, controlling corporate checking and payroll accounts and acting for Metro Diner to devise, direct, implement and supervise the wage and hour policies and practices challenged in this action.

13. Mark Davoli is a co-owner and operator of Metro Diner and the entities named in this Complaint. During the relevant period, Mark Davoli has been involved in the day-to-day business operation of Metro Diner, exercised operational control over Metro Diner and controlled significant business functions of Metro Diner, including: determining employee salaries, making hiring decisions, controlling corporate checking and payroll accounts and acting for Metro Diner to devise, direct, implement and supervise the wage and hour policies and practices challenged in this action.

# FACTS

14. Defendants' restaurants are open seven days a week, about 13-14 hours a day, including: Sundays through Thursdays from 7:00am to 8:00pm and Fridays and Saturdays from 7:00am to 9:00pm.

15. Defendants employ Servers, who are paid sub-minimum hourly wages, to wait on customers in their restaurants, answering questions about the menu, taking food and drink orders from customers, placing food and drink orders, collecting food and drink orders from service areas, delivering food and drinks to customers and providing excellent customer service.

## Non-Tipped Work Minimum Wage Violation

16. Defendants' policies and practices require Servers to perform work *unrelated* to their tipped occupation (*i.e.,* "dual jobs"), including, but not limited to: breaking down the ice machine, filling the soda machine with ice, brewing coffee, brewing tea, turning on the syrup warmer, refilling syrups, filling salt, pepper and sugar shakers, cutting lemons, filling creamers, butters and various sauces, re-stocking cups, coffee filters and tea bags, setting floor mats, lining up inside and outside tables, wiping down inside and outside tables, cleaning under inside and outside tables, putting up and taking down chairs, collecting silverware sets and rolling them into napkins, setting inside and outside tables with placemats, menus and silverware, checking and cleaning bathrooms as needed, checking stock and re-stocking if needed, cleaning the sneeze guard and window glass, updating the blackboard with daily drinks and soups, filling Sanibuckets, filling the outside coffee station, sweeping debris from outside areas, wiping down outside surfaces (railings, heaters and the entire storefront), cleaning coffee pots and tea urns, clearing tables of silverware and menus, rolling up floor mats, breaking down creamers, lemons and butters, sweeping the restaurant, updating the dinner boards, running food, bussing tables when there is no Busser and seating guests when there is no Host. The time spent on these tasks exceeds 20% of the Servers' work time in any given workweek.

Servers often perform these duties when the restaurant is closed and no customers are present.

17. Defendants' pay their Servers the tip-credit minimum wage rate for all hours worked. For example, Defendants currently pay Plaintiff, a Server in Pennsylvania, $2.83 per hour for each of his hours worked regardless of the nature of the work he performs. Thus, Defendants pay Servers less than the required minimum wage for all work, including work which is unrelated to their tipped occupation.

18. Because Defendants' Servers are not eligible to receive – and do not receive – any tips for performing tasks unrelated to their tipped occupation, Defendants should have tracked the time Servers spent on non-tipped work and paid them at the regular minimum wage applicable in their state for all this work. For example, Defendants should have paid Plaintiff, a Server in Pennsylvania, $7.25 per hour for each of the hours he spent performing all non-tipped tasks.

## Invalid "Tip Pool" Minimum Wage Violation

19. Defendants pay their Servers sub-minimum hourly wages under the tip-credit provisions of the FLSA and PMWA. These provisions allow employers to take a "tip credit" and pay their tipped employees at the tipped minimum wage rate, so long as they strictly and affirmatively comply with all requirements of the tip-credit provisions.

20. Defendants violate these requirements by requiring their Servers to participate in a mandatory, involuntary and invalid "tip pool" operated and controlled by management.

21. Defendants do not fund their "tip pool" with customer tips. Rather, Defendants require Servers to independently fund the "tip pool", subsidizing the wages of other employees, by contributing an amount equal to 2% of Defendants' gross daily sales into the "tip pool."

22. In addition, Defendants distribute funds from the "tip pool" to Bussers and Hosts who do not customarily and regularly receive tips. Bussers in Defendants' restaurants do not customarily and regularly interact with customers or receive tips from customers because they are only scheduled

to work three days a week (Friday to Sunday) and, even on those days, are only present in the restaurant for 6-7 hours. Further, Bussers do not regularly interact with customers since their primary duty is to clear tables after customers have departed. Likewise, Hosts in Defendants' restaurants do not customarily and regularly receive tips from customers because they are only scheduled to work about half the hours the restaurant is open each day.

23. Finally, Defendants do not provide Servers with advance notice of their tip credit and tip pool policies and practices. Specifically, Defendants do not tell Servers that the amount of the tip credit taken cannot exceed the amount of tips Servers actually receive; that tipped employees are entitled to keep all their tips except for contributions made to a tip pool to benefit other employees who customarily and regularly receive tips; or that Defendants cannot take the tip credit without informing Servers of these requirements. Defendants, moreover, do not provide Servers with advance notice of their obligation to pay 2% of their gross daily sales into a "tip pool", or provide Servers with advance notice that bussers, hosts and other staff sharing in the "tip pool" do not work on every shift, or even on every day of the week.

24. As a result of Defendants' improper use of the tip credit provisions of the FLSA and PMWA and their maintenance of an improper tip pooling arrangement, including an invalid "tip pool", Defendants do not qualify to take the tip credit and should pay their Servers at the regular minimum wage rate.

<b>Improper Deduction Violation</b>

25. Defendants require Servers to wear uniform shirts that are purchased from their restaurants, either through payroll deductions or other payments that cause Servers' wages to fall below the required minimum level.

## COLLECTIVE AND CLASS ALLEGATIONS

### FLSA Collective Action Allegations

26. Plaintiff brings his FLSA claim for himself and all people who worked as a Metro Diner Server in any state during the maximum statutory limitations period.

27. Plaintiff belongs to the FLSA collective he seeks to represent, because he worked as Metro Diner Server during the relevant period and personally experienced each of the violations alleged above.

28. The FLSA collective members are "similarly situated," as defined by 29 U.S.C. § 216(b), because they were subjected to the Company-wide policies and practices described herein.

### PMWA / PWPCL Class Action Allegations

29. Plaintiff brings his PMWA and PWPCL claims for himself and all people who worked as a Metro Diner Server in Pennsylvania since February 1, 2014.

30. Class treatment of Plaintiff's PMWA and PWPCL claims is appropriate because the Pennsylvania Class satisfies the requirements of Fed. R. Civ. P. 23.

31. The Pennsylvania Class is so numerous that joinder of all its members would be impracticable. During the relevant period, more than 40 people have worked as Servers in Defendants' two Pennsylvania restaurants.

32. Plaintiff's claims are typical of the claims of other Pennsylvania Class members, and he has no interests that are antagonistic to, or in conflict with, the interests of the other Pennsylvania Class members.

33. There are many questions of law and fact common to the claims of all Pennsylvania Class members because, *inter alia*, this action concerns the legality of the Company-wide compensation policies and practices described herein. The legality of these policies will be demonstrated by applying generally applicable legal principles to common evidence.

34. Plaintiff will fairly and adequately represent the interests of the Pennsylvania Class members and has retained competent and experienced counsel for this purpose.

35. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual plaintiffs and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## COUNT I
## VIOLATION OF THE FLSA
### Non-Tipped Work Minimum Wage Violation
### (for the proposed multi-state collective)

36. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

37. Defendants are "employers" as defined by 29 U.S.C. § 203(d).

38. The wages Defendants pay to Plaintiff and the FLSA collective are "wages" as defined by 29 U.S.C. § 203(m).

39. Defendants are an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

40. Plaintiff and the FLSA collective are "employees" as defined by 29 U.S.C. § 203(e)(1).

41. Plaintiff and the FLSA collective are similarly-situated individuals within the meaning of 29 U.S.C. §216(b).

42. 29 U.S.C. § 216(b) expressly allows private plaintiffs to bring collective actions to enforce an employers' failure to comply with their requirements.

43. Throughout the relevant period, Defendants have been obligated to comply with the FLSA's requirements, Plaintiff and the FLSA collective have been covered employees entitled to the FLSA's protections, and Plaintiff and the FLSA collective have not been exempt from receiving wages required by the FLSA for any reason.

44. The FLSA requires employers to pay employees a minimum wage of $7.25/hour. *See* 29 U.S.C. §206(b).

45. Under the FLSA's tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than $7.25/hour by taking a "tip credit" against its minimum wage obligation.

46. An employer may not take a "tip credit" when it requires or allows tipped employees to perform non-tipped tasks *unrelated* to their tipped occupation (i.e., "dual jobs"); when it requires or allows tipped employees to perform non-tipped tasks that, although *related* to their tipped occupation, exceed 20% of their work hours in any workweek; or when it fails to inform tipped employees of the provisions of the tip-credit subsection of the FLSA. *See* 29 U.S.C. § 203(m) (tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection").

47. Defendants willfully violate the FLSA by requiring or allowing their Servers to perform non-tipped tasks *unrelated* to their tipped occupation while paying them the tipped minimum wage for all this work.

48. Defendants willfully violate the FLSA by requiring or allowing their Servers to perform non-tipped tasks that, although *related* to their tipped occupation, exceeded 20% of their work hours in any workweek while paying them the tipped minimum wage for all this work.

49. Defendants willfully violate the FLSA by taking a tip credit against the minimum wages of Servers without informing them of the tip credit provisions of the FLSA.

## COUNT II
## VIOLATION OF THE FLSA
### Invalid Tip Pool Minimum Wage Violation
### (for the proposed multi-state collective)

50. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

51. Defendants required all of their Servers to participate in a tip pool and was a condition of their employment.

52. In order to apply a tip credit toward an employee's minimum wage under the FLSA, an employer must allow tipped employees to retain all the tips they receive, except those tips included in a valid tip pool and inform the employee it intends to take a tip credit. *See* 29 U.S.C. § 203(m).

53. Defendants willfully violate the FLSA by maintaining an invalid tip pool that required Servers to contribute a percentage of their gross daily sales, not the tips they received. Since Servers had to pay a percentage of every sale they made into the tip pool, even when they received no tip at all, Servers occasionally had to fund the tip pool directly from their wages, driving their earnings below the required minimum level.

54. Defendants willfully violate the FLSA by distributing funds from the "tip pool" to employees – namely Bussers and Hosts – who did not customarily and regularly receive tips.

55. Defendants willfully violate the FLSA by taking a tip credit against the minimum wages of Servers without providing advance notice of the details of their use of the tip credit or the required tip pool contribution.

## COUNT III
## VIOLATION OF THE PMWA
## (for the Pennsylvania class)

56. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

57. The unpaid wages at issue in this litigation are "Wages" as defined by MWA § 3(d).

58. Defendants are "Employers" as defined in MWA § 3(g).

59. Plaintiff and the Pennsylvania Class members are "Employees" as defined by PMWA § 3(h).

60. Throughout the relevant period, Defendants were obligated to comply with the PMWA's requirements, Plaintiff and the Pennsylvania Class members were covered employees entitled to the PMWA's protections, and Plaintiff and the Pennsylvania Class members were not exempt from receiving wages required by the PMWA for any reason.

61. The PMWA entitles employees to a minimum wage of $7.25/hour. *See* 43 P. S. § 333.104(a.1); 34 Pa. Code § 231.21.

62. The PMWA prohibits an employer from utilizing a tip credit to satisfy its minimum wage obligations to an employee where such employee contributes to a tip pool that is distributed to other employees who do not customarily and regularly receive tips. *See* 43 P.S. § 333.103(d)(2).

63. Defendants willfully violate the PMWA by utilizing a tip credit to satisfy their minimum wage obligations to Servers despite distributing tip pool proceeds to Bussers and Hosts who do not customarily and regularly receive tips.

64. Plaintiff and the FLSA class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of legally-required wages for work they performed from which Defendants derived a direct and substantial benefit.

65. MWA § 13 expressly allows private plaintiffs to bring a civil action to enforce an employers' failure to comply with the MWA's requirements.

66. MWA § 13 expressly provides that an agreement between the employer and employee to work for less than the required minimum wage is not a defense to an action seeking to recover unpaid minimum wages.

## COUNT IV
## VIOLATION OF THE PWPCL
## (for the Pennsylvania class)

67. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

68. The PWPCL generally prohibits pay deductions except for those explicitly permitted by law or regulation, none of which apply to this lawsuit. *See* 43 P.S. § 260.3; 34 Pa. Code § 9.1.

69. Defendants willfully violate the PWPCL by subjecting Plaintiff and the Class Members to impermissible wage deductions related to their purchase of required uniform shirts.

WHEREFORE, Plaintiff respectfully prays for an Order:

    a. Certifying this matter to proceed as a collective action with respect to Count I and as a class action with respect to Counts II and III;

    b. Appointing Stephan Zouras, LLP to serve as Class Counsel;

    c. Approving Plaintiff as an adequate Class representative;

    d. Requiring Defendants to provide the names and current (or best known) mailing and e-mail addresses of all collective / class members;

    e. Authorizing appropriate notice to all collective / class members;

    f. Finding that Defendants willfully violated the applicable provisions of the FLSA, PMWA and PWPCL by failing to pay all required overtime wages to Plaintiff and the collective / class members;

    g. Granting judgment in favor of Plaintiff and the collective / class members against Defendants, and each of them, jointly and severally, on Counts I, II and III;

    h. Awarding all available compensatory damages on Counts I, II and III in amounts to be determined;

    i. Awarding all available liquidated damages on Count II in an amount to be determined;

    j. Awarding pre-judgment interest on all compensatory damages due;

    k. Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

l. Awarding equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

m. Awarding any further relief the Court deems just, necessary and proper; and

n. Maintaining jurisdiction over this action to ensure Defendants' compliance with the foregoing.

## JURY DEMAND

Plaintiff demands a jury trial as to all claims so triable.

Respectfully Submitted,

Dated: February 1, 2017

*/s/ David J. Cohen*
David J. Cohen
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836

James B. Zouras (*pro hac* forthcoming)
Ryan F. Stephan (*pro hac* forthcoming)
Haley R. Jenkins (*pro hac* forthcoming)
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
312-233-1550

*Attorneys for Plaintiff*