## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH FIUMANO, for      :
himself and all others similarly situated,      :
     Plaintiff,      :
     :      CIVIL ACTION
     v.      :      NO. 17-465
     :
METRO DINER MANAGEMENT      :
LLC, et al.,      :
     Defendants.      :

**April  10 2018**                                          **Anita B. Brody, J.**

### MEMORANDUM

Plaintiff Joseph Fiumano, on behalf of himself and all others similarly situated, brings

this collective action and class action lawsuit against Metro Diner Management LLC, Metro

Services LLC, MD Original LLC, Consul Hospitality Group LLC, John Davoli Sr. and Mark

Davoli (collectively, "Defendants" or "Metro Diner") for alleged violations of the Fair Labor

Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") (Counts I & II), the Pennsylvania

Minimum Wage Act of 1968, 43 P.S. § 333.101 *et seq.* ("PMWA") (Count III), and the

Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* ("PWPCL") (Count

IV).[1]  Pursuant to the FLSA's collective action provision at 29 U.S.C. § 216(b), Mr. Fiumano

moves for the conditional certification of this matter as an FLSA collective action, and the

authorization of notice to "[a]ll persons who have worked as a Metro Diner Server during any

workweek in the past three years."[2]  For the reasons that follow, Mr. Fiumano's motion will be

---

[1] I exercise subject matter jurisdiction over Mr. Fiumano's FLSA claims pursuant to 28 U.S.C. § 1331
and supplemental jurisdiction over Mr. Fiumano's state law claims pursuant to 28 U.S.C. § 1367.

[2] Consistent with the nomenclature used in this Circuit, the Court will refer to a group of potential opt-in
plaintiffs as the "collective action class" or the "class."  *See Halle v. W. Penn Allegheny Health Sys. Inc.,*
842 F.3d 215, 226 (3d Cir. 2016).

granted in part and denied in part, and the authorization of notice to the collective action class will be denied without prejudice pending further briefing.

## I.      BACKGROUND

Defendants own and operate a chain of 30 Metro Diner restaurants in eight states that employ approximately 1,450 servers.  Mem. Of L. in Supp. of Pl.'s Mot. 2, ECF No. 45-1 ("Pl.'s Mem.").  Mr. Fiumano worked full-time as a Server in Defendants' restaurants in Altamonte Springs, Florida and Bensalem, Pennsylvania, for a period of approximately 18 months, concluding in March 2017.  *Id.*

On March 8, 2017, Mr. Fiumano filed a four-count Amended Collective and Class Action Complaint.  *See* ECF No. 24 ("Am. Compl.").  In Count I, Mr. Fiumano claims that Metro Diner violates the FLSA by paying their Servers the "tip credit"[3] minimum wage while requiring or allowing Servers to perform: (1) non-tipped tasks unrelated to their tipped occupation, and (2) non-tipped tasks that although related to their tipped occupation, exceed 20% of their work hours in any workweek.[4]  Am. Compl. ¶¶ 46-47.  In Count II, Mr. Fiumano asserts that Metro Diner violates the FLSA by distributing funds from the mandatory tip pool to Bussers, Hosts, non-tipped kitchen staff, managers and supervisors, and also by allowing the "house" to retain tip pool funds.  *Id*. at ¶¶ 51-53.  In Count III, Mr. Fiumano asserts that the aforementioned tip pool distribution violates the PMWA.  *Id*. at ¶ 61.  Finally, in Count IV, Mr. Fiumano asserts that Metro Diner violates the PWPCL by requiring Servers to incur wage deductions related to the purchase of their required uniform shirts and by requiring Servers to attend work-related meetings, without paying wages for the time spent in those meetings.  Am. Compl. ¶¶ 67-68.

---

[3] For an explanation of the "tip credit" minimum wage, *see* this Court's Explanation and Order, ECF No. 63.

[4] The Servers' non-tipped work will be referred to as "sidework."

Mr. Fiumano seeks the conditional certification of this case as a collective action and for the authorization of his proposed notice to a collective action class comprised of "[a]ll persons who have worked as a Metro Diner Server during any workweek in the past three years."  Pl.'s Mem. 1.

Mr. Fiumano asserts that he and the proposed class were similarly subject to two overarching Metro Diner policies, practices and procedures that correspondingly give rise to his two FLSA claims (Counts I & II of the Amended Complaint).[5]  First, Mr. Fiumano claims that Metro Diner requires Servers to spend a substantial amount of time performing non-tipped sidework, for which they receive the "tip credit" minimum wage.  Pl.'s Mem. 3.  Mr. Fiumano asserts that this sidework includes tasks unrelated to serving and tasks that although related to serving, occupy more than 20% of Servers' hours each workweek.  *Id.* at 3-4 n.1.  Second, Mr. Fiumano claims that Metro Diner requires Servers to pay 2% of their daily sales into a tip pool designated for Hosts and Bussers, and that it "appears" that non-tipped kitchen staff, managers or the "house" also periodically receive funds from the mandatory tip pool.[6]  *Id.* at 4-5.

---

[5] In Mr. Fiumano's opening memorandum, he also includes two claims brought in his Amended Complaint under the PWPCL, for Metro Diner's failure to pay Servers wages for the time they spend at work-related meetings and for Metro Diner's requirement that Servers purchase their uniform shirts.  Pl.'s Mem. 5.  *See* Am. Compl. ¶¶ 65-68 (Count IV).  A collective action pursuant to 29 U.S.C. § 216(b) may only be brought for purported violations of the FLSA.  29 U.S.C. § 216(b); *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 259 (3d Cir. 2012).  Mr. Fiumano has agreed to remove these claims from his revised proposed notice.  Reply Br. in Supp. of Pl.'s Conditional Certification Mot. 11-12, ECF No. 48.  Because a collective action may only be brought for purported violations of the FLSA, Mr. Fiumano's motion for conditional certification as to these two PWPCL claims will be denied.

[6] Although Count II of the Amended Complaint includes a claim that "supervisors" participated in the tip pool, Mr. Fiumano does not raise their purported participation in the present motion.  Therefore, it is assumed that Mr. Fiumano is not moving for conditional certification as to the claim that supervisors participated in the tip pool.

Metro Diner opposes a grant of conditional certification.  Metro Diner also opposes the inclusion of Servers who work at franchised locations in the proposed class, and objects to aspects of Mr. Fiumano's proposed notice.  Each of these issues will be addressed in turn.[7]

## II.     LEGAL STANDARD

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).  The FLSA provides that employees may bring an action for specified violations of the FLSA on their own behalf and on behalf of other employees "similarly situated." 29 U.S.C. § 216(b).  "A suit brought on behalf of other employees is known as a 'collective action.'" *Genesis Healthcare Corp.*, 569 U.S. at 69.

The filing of a complaint containing FLSA collective action allegations "does not automatically give rise to the kind of aggregate litigation provided for in Rule 23. Rather, the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs." *Halle v. W. Penn Allegheny Health Sys. Inc.,* 842 F.3d 215, 224 (3d Cir. 2016).  Courts must determine whether those who purport to join the collective action are "similarly situated," as intended by the statute.  *Id.*  Because there are no formal procedural rules mandating how to accomplish this task, the Third Circuit follows a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA.  *Id.; Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013).

"The first step, so-called conditional certification, requires a named plaintiff to make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus

---

[7] The Court's analysis currently only applies to a collective action class of Servers in non-franchised locations.  Likewise, the Court's analysis assumes, as stated on the record during the March 15, 2018, teleconference, that Mr. Fiumano will submit a revised definition of the collective action class to define the class as those Servers who claim they have been subjected to the claims on which conditional certification will be granted.

between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)). The court applies a "fairly lenient standard" at this stage. *Camesi*, 729 F.3d at 243. "If the plaintiffs have satisfied their burden, the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Id.* The court does not evaluate the merits of a plaintiff's case when ruling on a motion for conditional certification. *See, e.g.*, *Viscomi v. Clubhouse Diner*, No. 13-4720, 2016 WL 1255713, at *4 (E.D. Pa. Mar. 31, 2016); *see also Goldstein v. Children's Hosp. of Philadelphia*, No. 10-1190, 2013 WL 664174, at *4 (E.D. Pa. Feb. 25, 2013) (collecting cases).

Although this stage is known as "conditional certification," it "is not really a certification." *Zavala*, 691 F.3d at 536. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court, § 216(b)." *Genesis Healthcare Corp.*, 569 U.S. at 75 (citation omitted). "Conditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process." *Halle*, 842 F.3d at 224.

The second step in the two-step process is known as "final certification." *Id.* at 226. "[W]ith the benefit of discovery, 'a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff.'" *Camesi*, 729 F.3d at 243 (quoting *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011) (*rev'd on other grounds*, 569 U.S. 66 (2013))). "Being similarly situated . . . means that one is subjected to some common employer

5

practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala*, 691 F.3d at 538.  The Third Circuit "endorses an ad hoc approach to this analysis, considering all relevant factors and making a determination on a case-by-case basis as to whether the named plaintiffs have satisfied this burden by a preponderance of the evidence." *Halle*, 842 F.3d at 226.

Unlike at the conditional certification stage, a district court's decision to grant or deny final certification is not discretionary and must depend only on the court's factual findings as to whether the plaintiffs are in fact "similarly situated." *Zavala*, 691 F.3d at 535.  If this factual finding is made in the affirmative, the statute mandates that the district court grant final certification. *Id.*  ("We do not believe that the statute gives the district court discretion to deny certification after it has determined that plaintiffs are similarly situated.").  If, however, the collective action is decertified, the court will decertify the class, dismiss the opt-in plaintiffs without prejudice and allow the named plaintiffs to proceed to trial. *Halle*, 842 F.3d at 226.

## III.   DISCUSSION

### A.  Metro Diner's Policies and Procedures

#### a.   Non-Tipped Sidework (Count I)

Mr. Fiumano asserts that he "has offered proof beyond mere speculation of the extensive sidework required of all Servers," demonstrating that Servers both performed sidework unrelated to their serving duties for which they were paid the "tip credit" minimum wage and spent more than 20% of their hours in any given workweek performing sidework related to serving, for which they were also paid the "tip credit" minimum wage.  Pl.'s Mem. 13.  As factual support, Mr. Fiumano attaches Metro Diner's sidework charts, [**REDACTED**].  *See* Pl.'s Mem., Ex. I, ECF No. 45-11 (under seal).  Mr. Fiumano also attaches the declaration of Brandon Wilson, a former Metro Diner Kitchen Manager, who attests to both Metro Diner's standardized policies

and practices relating to Servers and the type and amount of sidework performed by Servers.  *See*
Pl.'s Mem., Ex. M, ¶¶ 2-4, ECF No. 45-15 (Stating that "Metro Diner has highly-standardized
policies, practices and procedures, including those related to Servers[,]" that Servers "perform
the same kind and amount of sidework[,]" that "Metro Diner regularly allows Servers to spend
more than 20% of their work time each week on untipped tasks related to serving," and that
"Metro Diner requires Servers to spend substantial time each week on untipped tasks unrelated to
serving . . . .").

Metro Diner does not dispute that Servers are subject to the same policies and procedures
regarding sidework.  Instead, Metro Diner primarily takes issue with the merits of Mr. Fiumano's
claims, arguing that Mr. Fiumano's legal theory is controversial and even if it were to be
accepted by the Court, Mr. Fiumano has not shown that he has suffered a violation of the FLSA.
However, inquiries into the merits of Mr. Fiumano's claims are inappropriate at the conditional
certification stage, and such contentions instead may be raised at summary judgment.  *See, e.g.*,
*Viscomi*, 2016 WL 1255713, at *4.  At this stage, Mr. Fiumano need only make a "modest
factual showing" to show "a factual nexus between the manner in which the employer's alleged
policy affected him or her and the manner in which it affected the proposed collective action
members."  *Halle*, 842 F.3d at 224.  Mr. Fiumano, by putting forth evidence of Metro Diner's
standardized policies and practices regarding the nature and amount of sidework performed by
Servers, has done so.  The collective action will be conditionally certified as to Count I.

### b.  Mandatory Tip Pool (Count II)

Mr. Fiumano asserts that he has offered proof beyond speculation that Servers were
required to pay 2% of their daily sales into a tip pool benefiting Bussers and Hosts, and that
Metro Diner "seemingly" permitted kitchen staff and the "house" to share in the tip pool "under

certain circumstances."[8]  Pl.'s Mem. 13-14.  As will be explained below, Mr. Fiumano has made

the required "modest factual showing" sufficient for conditional certification as to the portion of

Count II alleging participation of Hosts and Bussers in the tip pool.  However, Mr. Fiumano has

not made the requisite showing as to the portion of Count II alleging the periodic distribution of

tip pool proceeds to non-tipped kitchen staff, managers or the "house."

### i.  Participation of Hosts and Bussers in the Mandatory Tip Pool

Mr. Fiumano supports his contention that all Servers were subject to a policy requiring

them to contribute 2% of their daily sales into a tip pool benefiting Hosts and Bussers with

[**REDACTED**], among other evidence.  *See* Pl.'s Mem., Ex. L 500205, 500209, ECF No. 45-14

(under seal).

Metro Diner does not dispute that it has a company-wide policy of requiring Servers to

contribute 2% of their daily sales into a tip pool benefiting Hosts and Bussers.  Rather, Metro

Diner argues that Hosts and Bussers are lawful participants in the tip pool, and at the conditional

certification stage it is "paramount that the policy affecting Plaintiff and his coworkers in a

similar manner actually subjected them to a violation of the law."  Mem. In Supp. of Defs.' Resp.

in Opp'n to Pl.'s Mot. 24-25, ECF No. 46 ("Defs.' Mem.").  Metro Diner urges the Court to

"examine whether the tip pool was properly constituted."  *Id.* at 25.

Whether Metro Diner Hosts and Bussers "customarily and regularly receive[] tips" and

are therefore lawful participants in the tip pool is a question of fact.  *See Montano v. Montrose*

*Rest. Assocs., Inc.*, 800 F.3d 186, 194 (5th Cir. 2015) ("Determining whether an employee is one

who 'customarily and regularly receives tips' is a fact-intensive inquiry that requires a case-by-

case analysis of the employee's duties and activities.").  Without the benefit of full discovery, the

---

[8] It is assumed that "managers" are also included in this assertion, as Mr. Fiumano cross-references a
section of his brief detailing his claim that non-tipped kitchen staff, managers or the "house" periodically
receive funds from the tip pool.  *See* Pl.'s Mem. 14.

factual inquiry proposed by Metro Diner is inappropriate.  By putting forth facts demonstrating that Metro Diner has a policy of distributing proceeds from the mandatory tip pool to Hosts and Bussers, Mr. Fiumano has made the required "modest factual showing" of demonstrating a factual nexus between the manner in which the alleged policy affected him and the manner in which it affected the proposed class of Servers.  *Halle*, 842 F.3d at 224.  Metro Diner may raise the issue of the legality of Hosts and Bussers' participation in the tip pool following the close of discovery at summary judgment.  Conditional certification will be granted as to this portion of Count II.

### ii.   Participation of Non-Tipped Kitchen Staff, Managers or the "House" in the Mandatory Tip Pool

Mr. Fiumano purports to support his allegations of the participation of non-tipped kitchen staff, managers or the "house" in the tip pool by citing to his initial Complaint and excerpts of his deposition transcript and declaration.  *See* Pl.'s Mem. 5.  However, although Mr. Fiumano attests in his Amended (and initial) Complaint that he is "personally familiar with, and has been personally affected by, the policies and practices described in this Complaint," he has failed to put forward any facts to suggest that he has been subject to, or has any firsthand knowledge of, this purported policy.  *See* Am. Compl. ¶ 7.  Neither Mr. Fiumano's declaration nor the cited excerpts of his deposition testimony contain any facts to suggest that Mr. Fiumano was affected by, or had any firsthand knowledge of, a purported policy of allowing non-tipped kitchen staff, managers or the "house" to periodically participate in the tip pool.  Because Mr. Fiumano has failed to provide any evidence that he was ever affected by such a policy, he has failed to provide a "modest factual showing" demonstrating a factual nexus between the manner in which the alleged policy affected him and the manner in which it affected the proposed class of Servers.

*Halle*, 842 F.3d at 224.  Conditional certification will therefore  be denied as to this portion of Count II.

### B.  Class Definition

Metro Diner argues that Mr. Fiumano's proposed class is too broad because Servers who work in franchised locations should not be included in the proposed collective action class, a position which Mr. Fiumano opposes. Mr. Fiumano has not identified which Metro Diner locations are franchised, the relationship of the Metro Diner franchises to the Defendants, or evidence that Metro Diner franchises are subject to the same policies and procedures as corporate-owned locations. Therefore, presently, Mr. Fiumano has not made the requisite "modest factual showing" at this time, demonstrating a factual nexus between the manner in which Metro Diner's alleged policies affected  him and the manner in which it affected Servers in franchised locations.  *Halle*, 842 F.3d at 224.

### C.  Proposed Notice

Consistent with a district court's discretion to monitor the preparation and distribution of the notice, the authorization of the sending of court-approved notice will be denied without prejudice.  *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989) ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in

an improper manner.").[9]   A separate order will follow detailing the content of further briefing on this issue, and associated deadlines.[10]

## IV.    CONCLUSION

For the reasons set forth above, I will grant Mr. Fiumano's motion as to Count I of the Amended Complaint and the portion of Count II regarding the distribution of the tip pool proceeds to Hosts and Bussers.  I will deny Mr. Fiumano's motion as to the portion of Count II of the Amended Complaint regarding the distribution of the tip pool proceeds to non-tipped kitchen staff, managers or the "house."  Mr. Fiumano's motion will also be denied with respect to claims raised under the PWPCL.  The authorization of the sending of court-approved notice will be denied without prejudice, pending further briefing on the potential inclusion of Servers in franchised locations in the collective action class.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:

---

[9] "Although *Hoffman–La Roche* arose in the context of a proceeding under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, the ADEA incorporates enforcement provisions of the FLSA, including the collective action provisions of 29 U.S.C. § 216(b)."  *Halle*, 842 F.3d at 224 n.8.

[10] In addition to disputing the proposed class definition, Metro Diner also disputes other aspects of the proposed notice, including the description of the case and the inclusion of a section stating that retaliation by Metro Diner against any opt-in plaintiffs is prohibited.  As the authorization of the sending of the notice will be denied without prejudice, the parties will receive instruction regarding the resolution of these notice-related disputes in the order to follow.  The Court will likewise address Mr. Fiumano's proposed notice dissemination plan and the appointment of Class Counsel following the resolution of the franchise issue.