## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH FIUMANO, for himself and all   :
others similarly situated,   :
      Plaintiff,   :
                           :      CIVIL ACTION
      v.   :      NO. 17-465
                           :
METRO DINER MANAGEMENT   :
LLC, et al.,   :
      Defendants.   :

**May 5, 2022**                                               **Anita B. Brody, J.**

## MEMORANDUM

Plaintiff Joseph Fiumano, on behalf of himself and all others similarly situated, brings this collective action against Metro Diner Management LLC, Metro Services LLC, MD Original LLC, Consul Hospitality Group LLC, John Davoli, Sr., and Mark Davoli (collectively, "Defendants" or "Metro Diner") for alleged violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA").[1]

Defendants own and operate a chain of 30 Metro Diner restaurants in eight states that employ approximately 1,450 Servers. Fiumano worked full-time as a Server in Defendants' restaurants in Altamonte Springs, Florida and Bensalem, Pennsylvania for approximately 18 months. He claims that Metro Diner violated the FLSA in two ways. First, he claims they improperly paid their Servers the "tip credit" minimum wage despite requiring Servers to perform non-tipped tasks for more than 20% of their work hours. Second, he claims they

---

[1] Additionally, Fiumano brings claims for violation of the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Cons. Stat. § 333.101 *et seq*., and the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 *et seq*. I exercise federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

required Servers to pay 2% of their daily sales into an illegal tip pool designated for Hosts and

Bussers.

On April 10, 2018, the Court granted Fiumano's motion for conditional certification on

the FLSA claims and later approved notice to an FLSA collective action class composed of all

people who "worked as a Metro Diner Server on or after April 10, 2015." *See* Conditional

Certification Mem., ECF No. 67; Order of June 4, 2018, ECF No. 75; Order of June 11, 2018,

ECF No. 79.  On August 14, 2020, the Court granted Fiumano's motion for final FLSA

certification. *See* Final Certification Mem., ECF No. 150; Order of Aug. 14, 2020, ECF No. 151.

Approximately 245 Servers have opted in to the FLSA collective action ("Opt-in

Plaintiffs").[2] *See* Defs.' Mem. in Supp. of Mot. to Decertify Collective Action 1, ECF No. 142.

Defendants now move to dismiss with prejudice, as a sanction pursuant to Federal Rule of Civil

Procedure 37(b), six Opt-In Plaintiffs (Kelley Anderton, Michael Aninger, Cheyenne Coe, Alton

Mitchell, Kahli Rauf, and Anicia Sweeney) who failed to appear for depositions. Plaintiffs do not

oppose the dismissal of Aninger, Coe, and Rauf. They do, however, oppose the dismissal of

Anderton, Mitchell, and Sweeney. I will grant the motion to dismiss Aninger, Coe, and Rauf

from the action because dismissal is unopposed. I will deny the motion to dismiss Anderton,

Mitchell, and Sweeney.

## I. BACKGROUND

During discovery, Defendants received written interrogatory responses and responses to

requests for production of documents from Fiumano and five Opt-In Plaintiffs. Additionally,

Defendants received responses to discovery questionnaires from over 50 Opt-In Plaintiffs.

Although the Court permitted Defendants to depose up to 35 Opt-In Plaintiffs, Defendants were

---

[2] Eleven of the Opt-in Plaintiffs have been dismissed from the action. *See* Joint Stip. of Dismissal  and
Order, ECF No. 184.

able to depose Fiumano and 21 Opt-In Plaintiffs because a number of Opt-In Plaintiffs failed to respond or appear.

In April and May 2019, Opt-In Plaintiffs Anderton, Mitchell, and Sweeney completed discovery questionnaires. On November 30, 2021, Defendants filed a motion to compel Anderton, Mitchell, and Sweeney to appear at a deposition because they had previously failed to appear. Defs.' Mot. Compel, ECF No. 179. On December 16, 2021, the Court entered an order granting Defendants' motion to compel and ordered Anderton, Mitchell, and Sweeney to appear at a deposition on or before February 14, 2022. Dec. 16, 2021 Order, ECF No. 181.

On January 19, 2022, Plaintiffs' counsel notified Defendants' counsel that they were unable to schedule the depositions of Mitchell and Sweeney because "[w]e don't have good contact information / have not been able to contact them." Defs.' Mot. Sanctions Ex. 1, ECF No. 186-3. In addition, Plaintiffs' counsel stated that they were unable to schedule the deposition of Anderton, but she was justified in her inability to appear because she had "no job, financial hardship, can't pay bills, no reliable phone access." *Id*. Plaintiffs' counsel also informed Defendants that they were "available to confer on these issues as needed." *Id.* On January 24, 2022, Defendants' counsel responded by sending deposition notices to Plaintiffs' counsel for the depositions of Anderton, Mitchell, and Sweeney to take place on January 31, 2022. Defs.' Mot. Sanctions Ex. 2. Anderton, Mitchell, and Sweeney failed to appear at the depositions scheduled for January 31, 2022.

## II. DISCUSSION

In "egregious circumstances," a district court may use the sanction of dismissal when a plaintiff commits discovery violations. *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 161 (3d Cir. 2003). In *Poulis v. State Farm Fire and Casualty Co.*, the Third Circuit

set out the following six factors that a district court must balance to determine whether to dismiss a case for failure to prosecute:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

747 F.2d 863, 868 (3d Cir. 1984) (emphasis omitted). The same *Poulis* factors must also be considered by a district court deciding whether to dismiss a case pursuant to Federal Rule of Civil Procedure 37(b) for failure to respond to discovery. *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013). "None of the *Poulis* factors is alone dispositive, and . . . not all of the factors need to be satisfied to justify dismissal of a complaint . . . ." *Hildebrand v. Allegheny Cty.,* 923 F.3d 128, 132 (3d Cir. 2019). "[D]ismissals with prejudice . . . are drastic sanctions." *Poulis*, 747 F.2d at 867. "If the case is close, 'doubts should be resolved in favor of reaching a decision on the merits.'" *Hildebrand*, 923 F.3d at 132 (quoting *Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 870 (3d Cir. 1994)).

### A. Evaluation of the *Poulis* Factors

#### 1. The extent of the party's personal responsibility

The first factor—the extent of the party's personal responsibility—weighs against dismissal. "[I]n determining whether dismissal is appropriate, [a court] look[s] to whether the party bears personal responsibility for the action or inaction which led to the dismissal." *Adams*, 29 F.3d at 873. Here, Anderton, Mitchell, and Sweeney do not bear personal responsibility for their failure to appear at a deposition and comply with the Court's order to appear. Mitchell and Sweeney cannot be held personally responsible for failure to appear at depositions and respond to a Court order that they did not know existed because Plaintiffs' counsel does not have their

current contact information. Additionally, Anderton's failure to appear is not the result of neglect of her responsibility; rather, it is due to her financial instability and factors beyond her control, including the lack of reliable phone access. As a result, this factor weighs against dismissal.

### 2. Prejudice to the other parties

The second factor—prejudice to the other parties—weighs slightly in favor of dismissal. Prejudice "includes deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." *Id.* at 874; *see also Poulis*, 747 F.2d at 868 (finding prejudice when "interrogatories were never answered nor were objections filed; defense counsel was obliged to file a motion to compel answers, and was obliged to file its pretrial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"). "It also includes 'the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy.'" *Briscoe*, 538 F.3d at 259 (quoting *Ware v. Rodale Press, Inc*., 322 F.3d 218, 222 (3d Cir. 2003)). "[E]vidence of 'true prejudice ... bear[s] substantial weight in support of a dismissal.'" *Hildebrand*, 923 F.3d at 134 (quoting *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984)).

This is an FLSA collective action where Plaintiffs may rely on representative evidence to establish violations of the FLSA. Defendants have succeeded overall in their efforts to obtain representative discovery. Defendants have received written interrogatory responses and responses to requests for production of documents from Fiumano and five Opt-In Plaintiffs. They have also received responses to discovery questionnaires from over 50 Opt-In Plaintiffs. Additionally, Defendants have deposed Fiumano and 21 Opt-In Plaintiffs. Defendants' inability to depose Anderton, Sweeney, and Mitchell may minimally impact their ability to prepare for summary judgment and trial. However, the prejudice to Defendants is modest given Defendants'

success obtaining representative discovery and deposing 21 Opt-In Plaintiffs. Because evidence

from Anderton, Sweeney, and Mitchell is far from essential to proving or disproving the claims,

the second factor weighs slightly in favor of dismissal.

### 3. History of dilatoriness

The third factor—history of dilatoriness—weighs against dismissal. "Extensive or

repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-

response to interrogatories, or consistent tardiness in complying with court orders." *Adams*, 29

F.3d at 874. "[C]onduct that occurs one or two times is insufficient to demonstrate a 'history of

dilatoriness.'" *Briscoe*, 538 F.3d at 261. "Furthermore, a party's problematic acts must be

evaluated in light of its behavior over the life of the case." *Adams*, 29 F.3d at 875.

Defendants have not demonstrated that Anderton, Sweeney, and Mitchell have a history

of dilatoriness. The record reflects that in April and May 2019 Anderton, Sweeney, and Mitchell

complied with Defendants' discovery requests and completed discovery questionnaires. More

than two years later, after seeking no further discovery from Anderton, Sweeney, and Mitchell,

Defendants then sought to depose them. Although Anderton, Sweeney, and Mitchell failed to

comply with a court order and notice of deposition, this failure does not amount to the extensive

or repeated delay necessary to constitute a history of dilatoriness. Viewing the record as a whole,

this factor weighs against dismissal.

### 4. Willfulness or bad faith

The fourth factor—willfulness or bad faith—weighs against dismissal. "Under this factor,

the District Court must consider whether the conduct was 'the type of willful or contumacious

behavior which was characterized as flagrant bad faith.'" *Briscoe*, 538 F.3d at 262 (quoting

*Adams*, 29 F.3d at 875). Willfulness involves "intentional or self-serving behavior," rather than

behavior that is "merely negligent or inadvertent." *Briscoe*, 538 F.3d at 262 (internal quotation marks omitted). "A lengthy delay reflects 'inexcusable negligent behavior,' but that behavior alone does not rise to the level of willfulness or bad faith." *Hildebrand*, 923 F.3d at 135 (quoting *Adams*, 29 F.3d at 876).

The failure of Mitchell and Sweeney to respond cannot be characterized as willful or contumacious as they may not have even be aware of Defendants' attempts to depose them. Additionally, Anderton's inability to appear at a deposition due to financial hardship cannot be characterized as intentional or self-serving behavior. There is absolutely no evidence that Anderton, Sweeney, or Mitchell failed to appear at their depositions due to flagrant bad faith. As such, the fourth factor weighs against dismissal.

### 5. Effectiveness of sanctions other than dismissal

The fifth factor—effectiveness of sanctions other than dismissal—weighs in favor of dismissal. "Alternatives are particularly appropriate when the plaintiff has not personally contributed to the delinquency." *Hildebrand*, 923 F.3d at 136 (quoting *Poulis*, 747 F.2d at 866). "It bears repeating that important in the overall *Poulis* analysis, and particularly in the consideration of alternative sanctions, is that 'district courts should be reluctant to deprive a plaintiff of the right to have his claim adjudicated on the merits.' *Id.* (quoting *Adams*, 29 F.3d at 876.

Anderton, Sweeney, and Mitchell are not personally responsible for their failure to appear at their depositions. Therefore, sanctions other than dismissal may be appropriate. Plaintiffs' counsel suggests one possible alternative sanction—the imposition of a monetary sanction that prohibits Anderton, Sweeney, and Mitchell from receiving any enhancement payments awarded under any future settlement or judgment to Opt-In Plaintiffs who participated in discovery.

Defendants' counsel has not responded to this proposed alternative sanction. Because alternative sanctions may be effective, the fifth factor weighs against dismissal.

### 6. Meritoriousness of the claim or defense

The sixth factor—the meritoriousness of the claim or defense—weighs against dismissal. "A claim, or defense will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis*, 747 F.2d at 869-70. Thus, to determine whether the claim is meritorious, the court applies the Rule 12(b)(6) motion to dismiss standard for failure to state a claim. *Briscoe*, 538 F.3d at 263.

This litigation clearly has merit as it has already survived a motion for judgment on the pleadings and has received final FLSA certification. Therefore, the sixth factor weighs against dismissal.

### B. Balancing the *Poulis* Factors

"None of the *Poulis* factors is alone dispositive, and . . . not all of the factors need to be satisfied to justify dismissal of a complaint . . . ." *Hildebrand*, 923 F.3d at 132. "If the case is close, 'doubts should be resolved in favor of reaching a decision on the merits.'" *Id*. (quoting *Adams*, 29 F.3d at 870).

Here, only the prejudice factor weighs modestly in favor of dismissal and all other factors weigh against dismissal. This is not a close case and clearly dismissal is inappropriate. Therefore, I will deny Defendants' motion to dismiss Anderton, Sweeney, and Mitchell from the action with prejudice pursuant to Federal Rule of Civil Procedure 37(b) for failure to appear at their depositions.

## III. CONCLUSION

I will grant in part and deny in part Defendants' motion to dismiss six Opt-In Plaintiffs as a sanction for their failure to appear at depositions. I will grant the motion to dismiss Aninger, Coe, and Rauf from the action because dismissal is unopposed. I will deny the motion to dismiss Anderton, Mitchell, and Sweeney.

_ s/ANITA B. BRODY, J.__ __
ANITA B. BRODY, J.

COPIES VIA