## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH FIUMANO, for himself and all others similarly situated, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 17-465 |
| | : | |
| METRO DINER MANAGEMENT LLC, et al., | : | |
| Defendants. | : | |

**July 7, 2022**                                                     **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

Before the court is a discovery dispute that arises in the context of cross-motions for summary judgment.  Plaintiff Joseph Fiumano, on behalf of himself and all others similarly situated, brought this collective action against Metro Diner Management LLC, Metro Services LLC, MD Original LLC, Consul Hospitality Group LLC, John Davoli, Sr., and Mark Davoli (collectively, "Defendants" or "Metro Diner") for alleged violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA").[1]

Defendants own and operate a chain of thirty Metro Diner restaurants in eight states that employ approximately 1,450 Servers.  Fiumano worked full-time as a Server in Defendants' restaurants in Altamonte Springs, Florida and Bensalem, Pennsylvania for approximately eighteen months.  He claims that Metro Diner violated the FLSA in two ways.  First, he claims they improperly paid their Servers the "tip credit" minimum wage rather than the standard

---

[1] Additionally, Fiumano brings claims for violation of the Pennsylvania Minimum Wage Act of 1968, 43 Pa. Cons. Stat. § 333.101 *et seq*., and the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 *et seq*.  I exercise federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

minimum wage despite requiring Servers to perform non-tipped tasks for more than 20% of their work hours.  Second, he claims they required Servers to pay 2% of their daily tips into an illegal tip pool designated for Hosts and Bussers.

On March 16, 2022, the parties filed cross motions for summary judgment that are pending.  In Defendants' partial motion for summary judgment, Defendants seek dismissal of the claim that Hosts and Bussers unlawfully participated in a tip pool and seek dismissal of all claims against John Davoli, Sr. and Mark Davoli on the basis that they were not employers of Plaintiffs because they had no operational control over any of the Metro Diner restaurants.[2]  To support their summary judgment motion, Defendants attach and rely on the declarations of John Davoli, Sr., Mark Davoli, and Carl Sahlsten.

In Plaintiffs' motion for summary judgment, Plaintiffs move for entry of summary judgment in their favor on their collective action claims based on their contention that the facts they present are undisputed and entitle them to relief on their claims.  To oppose Plaintiffs' motion for summary judgment, Defendants attach and rely on the declarations of thirty-five current Metro Diner Managers and Servers,[3] none of whom are Opt-In Plaintiffs in the collective action, to prove that Plaintiffs are not entitled to summary judgment because genuine disputes of material fact exist as to Plaintiffs' claims.

Plaintiffs move to strike the declarations of John Davoli, Sr., Mark Davoli, Carl Sahlsten,

---

[2] Defendants also seek dismissal of all claims against Consul Hospitality Group LLC and MD Original LLC.  Additionally, they seek dismissal of all claims brought by the seven Opt-In Plaintiffs who were employed at Metro Diner locations in Nevada.

[3] The thirty-five current Metro Diner Managers and Servers are: Adam Szwech, Alexandria Pitts, Amber Wise, Amy Rusk, Antonette Lomuscio, April Anspach, Ashley Wildasin, Brandon Glines, Casey Pereira, Cheryl Doll, Chris Wade, Cottie Ledford, Courtney Martin, Dawn Lalumera, Dawn Owens, Elizabeth Moore, Gehad Abdelaal, Haylee Nugent, Hunter Dickerson, Jason Jones, Jennifer Fuchs, Jennifer McGuire, Jennifer Walker, Julia Bolena, Lauren Traxler, Mary Holland, Rachael Brown, Rebecca Haack, Samantha Allen, Sara Finley, Sarafina Matlack, Sarah Kear, Sarah Marchbanks, Tiffany Corbett, and Victoria McHugh.

and the thirty-five current Metro Diner Managers and Servers.  Plaintiffs argue that the court

should not consider any of the declarations submitted by Defendants when ruling on the motions

for summary judgment because Defendants failed to disclose any of these witnesses during

discovery as required by Federal Rule of Civil Procedure 26.  I will deny Plaintiffs' motion to

strike the declarations of John Davoli, Sr., Mark Davoli, Carl Sahlsten.  I will also deny

Plaintiffs' motion to strike the declarations of the thirty-five current Metro Diner Managers and

Servers and I will reopen discovery to give Plaintiffs the opportunity to cure the prejudice that

has resulted from Defendants' failure to supplement their Rule 26 disclosures as to these

individuals.

## I. BACKGROUND

On April 10, 2017, the parties filed a proposed discovery plan that anticipated they would

complete their exchange of Rule 26(a) initial disclosures on or before May 12, 2017.  Proposed

Discovery Plan, ECF No. 30.  On April 21, 2017, counsel for Defendants left their former law

firm and opened their present firm.  Despite the agreement to exchange Rule 26(a) initial

disclosures on or before May 12, 2017, neither party provided initial disclosures. Thus,

Defendants did not initially disclose that John Davoli, Sr., Mark Davoli, Carl Sahlsten, or any of

the thirty-five current Metro Diner Managers and Servers were likely to have discoverable

information.  Additionally, Defendants did not supplement their disclosures to later identify any

of these individuals as likely to have discoverable information.

On February 14, 2022, discovery concluded.  ECF No. 182.  Although Defendants did

not provide Rule 26 disclosures, Plaintiffs were able to glean information prior to the close of

discovery regarding the likelihood that John Davoli, Sr., Mark Davoli, and Carl Sahlsten

possessed discoverable information.  As to the thirty-five current Metro Diner Managers and

Servers, Plaintiffs learned nothing about whether these particular individuals possessed discoverable information, but they were generally informed that Servers and Managers who worked alongside Fiumano and Opt-In Plaintiffs might have discoverable information.

**A.  John Davoli, Sr. and Mark Davoli**

On several occasions prior to the close of discovery, Defendants informed Plaintiffs that John Davoli, Sr. and Mark Davoli (the "Davolis") were not proper Defendants in the litigation because they had no operational control over any of the Metro Diner restaurants.

On February 23, 2017, defense counsel, at the request of Plaintiffs' counsel, provided Plaintiffs' counsel with a description of the roles the Davolis held in the operation of Metro Diner restaurants:

> John Sr. has an ownership interest in the original Metro Diner restaurants that all operate in Florida. He acts as a passive investor – attending some meetings and speaking with his sons to stay in the loop of what is happening with the company financially. But he has no involvement in the day-today operations, policy drafting or implementation, or employee training of any kind.

> Mark is the founder of the restaurant and the current face of the brand. Mark acts in an advisory role on new menu items and restaurant expansion. He is the brand ambassador, attending the openings of new delis, speaking with customers on charity days, and supporting the regional manager that is in charge of the restaurant to ensure everything from a food aspect runs smoothly during the first few days of a deli's operation. He has no control of day-to-day operations of the individual delis and plays no role in determining scheduling, pay rates, or policy setting for any employee or deli.

ECF No. 192-1.  In their answer to the amended complaint, Defendants denied that the Davolis had any control over the day-to-day operations of any Metro Diner Restaurants.  ECF No. 28. Additionally, Defendants elected not to provide substantive responses to Plaintiffs' document requests and interrogatories on the basis that they did not have operational control over any of the Metro Diner Restaurants and were not the appropriate individuals to respond.  In response to

Plaintiff's First Set of Interrogatories and Document Requests and to Plaintiffs' Third Set of

Interrogatories and Document Requests, each of the Davolis explained:

> Defendant is not an appropriate person to respond to this Interrogatory. Defendant is one of the original founders of the Metro Diner restaurant concept. Defendant maintained an ownership interest and operational control over the three original Metro Diner restaurants until May 2014. After that time, Defendant maintains a partial ownership interest in some of the Metro Diner restaurants and acts as the restaurant's brand ambassador. But Defendant no longer maintains operational control over any of the restaurants and does not determine, set, or modify any employee's wages or the company's policies as it applies to hourly employees.

ECF Nos. 189-3, 189-6.  Moreover, the Davolis objected to providing responses to Plaintiffs'

Second Set of Interrogatories and Second Set of Document requests because they were "not

proper defendants in this lawsuit" and did not have knowledge or documents that were

responsive or relevant to the litigation.  ECF Nos. 189-4, 189-5.  As a result, the Davolis never

responded to any of Plaintiffs' discovery requests and Plaintiffs never sought to depose either of

them.

### B. Carl Sahlsten

Although Defendants failed to name Sahlsten in a Rule 26 disclosure, Plaintiffs learned

of Sahlsten's identity on June 9, 2017 when he responded on behalf of Defendants Metro Diner

Management LLC and Metro Services LLC to Plaintiffs' First Set of Interrogatories.  *See* ECF

No. 192-4.  Interrogatory Number 1 asked Defendants to identify all persons who assisted with

Defendants' responses to Plaintiffs' interrogatories, document requests, and disclosures.  *Id.*

Defendants responded, "Carl Sahlsten assisted in the identification of responsive documents and

providing details on Defendants' organizational structure."  *Id.*  In addition, Sahlsten provided

verification that "the answers to the foregoing interrogatories are true and correct to the best of

my knowledge and belief."  *Id.*

On September 1, 2017, Defendants again relied on assistance from Sahlsten—this time in

the form of an affidavit in support of Defendants' opposition to Plaintiffs' motion seeking an order to notify similarly situated persons of the collective action. *See* ECF No. 46. In the affidavit, Sahlsten identified himself as the Chief Executive Officer ("CEO") of Metro Diner and discussed the roles of Servers, Bussers, and Hosts at Metro Diner. ECF No. 46-1. Additionally, Sahlsten discussed several standard Metro Diner policies and operating procedures. *Id.*

On September 8, 2017, Plaintiffs' counsel emailed Defendants' counsel to schedule a deposition of Sahlsten before September 18, 2017. ECF No. 192-2. Due to Hurricane Irma, which occurred on September 7, 2017, Defendants' counsel's office had been evacuated. *Id.* Defendants' counsel did not return to their office until September 15, 2017. *Id.* Due to the limited availability of Sahlsten and counsel, Defendants' counsel offered to make Sahlsten available for deposition on September 27, 2017 and stated that Defendants would not oppose a motion to extend the time for Plaintiffs to file a reply to their motion until after the deposition of Sahlsten. Plaintiffs' counsel decided not to depose Sahlsten on September 27, 2017 and "expressly reserve[d] . . . their right to ask the Court to strike or disregard Mr. Sahlsten's declaration in light of Defendants' failure to timely produce him for deposition." *Id.*

Plaintiffs' counsel never again sought to depose Sahlsten, even though discovery did not conclude until February 14, 2022, more than four years after Plaintiffs initially sought to depose Sahlsten.

### C. Thirty-Five Current Metro Diner Managers and Servers

Early in the litigation, Defendants informed Plaintiffs that Metro Diner Managers and Servers would likely possess discoverable information. In Plaintiff's First Set of Interrogatories, Plaintiffs asked Defendants to "Identify all persons with knowledge of any fact alleged in Plaintiffs' Amended Complaint, or Defendants' Answer," and to "Identify each person with

knowledge of the amount of untipped work Plaintiff or the Opt-In Plaintiffs performed and the wages paid for this work." ECF 199-3 at 4-6. On June 9, 2017, Defendants provided the following response to both interrogatories: "[T]he management staff and employees who worked alongside the Plaintiff and Opt-In Plaintiffs during their time as servers for Metro Diner would likely have knowledge . . . ." *Id.*

On June 22, 2018, after the court conditionally certified the collective action, Defendants provided Plaintiffs with a court-ordered list of 3,410 names and addresses of all persons who worked as Servers at Metro Diners during the time period for the collective action. ECF No. 203-1 at ¶¶ 4-6. In September 2021, Defendants' counsel emailed Plaintiffs' counsel and informed them that Defendants "may call at trial . . . [a]ny current or former . . . Manager[,] . . . server, host, or busser . . . in a store where one of the opt ins who were deposed in this case worked." *Id.* ¶¶ 8-9, Ex. A. Defendants' counsel "also told counsel for Plaintiffs that [they] would be willing to work with them to schedule any depositions they wanted to take." *Id.* ¶ 10.

After Plaintiffs moved for summary judgment, Defendants obtained the declarations of thirty-five current Metro Diner Managers and Servers ("Thirty-Five Managers and Servers"). *Id.* ¶¶ 12-13. Twenty of the thirty-five declarants' names had appeared in the June 22, 2018 class list produced to Plaintiffs. *Id.* ¶ 13. The names of the other fifteen declarants had never been provided to Plaintiffs. *Id.* ¶ 14.

## II. LEGAL STANDARD

Plaintiffs move to strike the declarations of the Davolis, Sahlsten, and the Thirty-Five Managers and Servers. Plaintiffs contend that Defendants failed to initially disclose these declarants as required by Rule 26(a)(1)(A)(i) and failed to supplement their disclosures to later

identify these declarants as required by Rule 26(e)(1)(A).[4]  As a result, Plaintiffs argue these declarations should be stricken pursuant to Rule 37.

### A. Rule 26 Disclosure Requirements

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party "without awaiting a discovery request, [to] provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i).  "Rule 26 disclosures are meant to provide the opposing party with 'information as to the identification and location of persons with knowledge so that they can be contacted in connection with the litigation ... for being interviewed, for being deposed, or for providing background information.'" *Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 07-3770, 2010 WL 1849913, at *3 (D.N.J. May 7, 2010) (quoting *Bilrite Corp. v. World Road Markings, Inc.*, 202 F.R.D. 359, 362 (D. Mass. 2001)).  Under Rule 26, a party has a continuing obligation to update and keep its disclosures current.  *See* Fed. R. Civ. P. 26(e)(1)(A).  "The obligation to update initial disclosures is meant to ensure that the playing field remains level, narrow the relevant issues, and avoid 'undue prejudice and surprise' to the opposing party." *Eli Lilly*, 2010 WL 1849913, at *3.  Rule 26(e)(1)(A) requires a party to "supplement or correct" its initial

---

[4] Additionally, Plaintiffs appeared to initially contend that Defendants violated Rule 26(a)(1)(A)(ii) by failing to produce these declarations in response to Plaintiffs' document requests and by obtaining these declarations after the close of discovery.  Rule 26(a)(1)(A)(ii) requires a party to produce "a copy… of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses."  Fed Civ. P. 26(a)(1)(A)(ii).  Nothing in the Rule, however, requires a party to prepare an affidavit in support of summary judgment before the close of discovery, or to produce it to the opposing party prior to the close of discovery.  Moreover, Plaintiffs appear to deny that they are even making the argument that Defendants had an obligation to prepare and produce the declarations prior to the close of discovery: "Contrary to Defendants' position, Plaintiffs have not claimed the 35 Summary Judgment declarations should have been drafted, signed, and produced prior to the close of discovery."  ECF No. 205 at 7.  Thus, the only question is whether the declarations should be stricken because Defendants failed to disclose the identities of the declarants during discovery in violation of Rules 26(a)(1)(A)(i) and 26(e)(1)(A).

disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Further disclosures under Rule 26(e)(1)(A) are only required if the omitted or additional information "has not otherwise been made known to the other parties." *Id.* This limitation on further disclosure acknowledges "that there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery." 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049.1 (3d ed. 1993). "Although the 'otherwise made known' standard of [Rule 26] may be met where disclosure of the information in question is clear and unambiguous, the standard is not satisfied where the disclosure is not sufficiently clear." *Zoltek Corp. v. United States*, 71 Fed. Cl. 160, 167 (Ct. Cl. 2006); *see also Pfizer Inc. v. Teva Pharms. USA, Inc*., No. 04-754, 2006 WL 2938723, at *3 (D.N.J. Oct. 13, 2006). "Alleged 'disclosures' during discovery that are not facially apparent and require the drawing of further 'inferences' are insufficient to meet the requirements of Rule 26." *Eli Lilly*, 2010 WL 1849913, at * 4.

### B. Rule 37 Sanctions for Failure to Comply with Disclosure Requirements

When a party fails to comply with Rule 26 disclosure requirements, the opposing party, pursuant to Federal Rule of Civil Procedure 37, may seek the imposition of sanctions, including the exclusion of any undisclosed evidence. Rule 37 provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions . . . .

Fed. R. Civ. P. 37(c)(1).  Rule 37 provides two scenarios in which exclusion of evidence should

be prohibited, if the failure to provide information was "substantially justified" or "harmless."

*Id.*  "'Substantial justification' requires 'justification to a degree that could satisfy a reasonable

person that parties could differ as to whether the party was required to comply with the

disclosure request.'"  *Wachtel v. Guardian Life Ins.*, No. 01-4183, 2005 U.S. Dist. LEXIS 51523,

at *14 (D.N.J. Aug. 31, 2005) (quoting *Fitz, Inc. v. Ralph Wilson Plastics Co*., 174 F.R.D. 587,

591 (D.N.J. 1997)).  Although Rule 37 does not define when a failure to provide information is

"harmless," the 1993 Advisory Committee's Note provides several examples of when a failure to

disclose is "harmless," including "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of

the name of a potential witness known to all parties."  Fed. R. Civ. P. 37, advisory committee's

note to 1993 amendment.

Even when the failure to provide information is not "substantially justified" and is not

"harmless," the exclusion of evidence is not automatic and is a matter within the district court's

discretion.  *Newman v. GHS Osteopathic*, *Inc., Parkview Hosp. Div*., 60 F.3d 153, 156 (3d Cir.

1995).  "[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be

imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the

proponent of the evidence."  *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir.

1997) (quoting *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 905 (3d Cir.

1977)).  In considering whether to exclude evidence as a sanction for failure to comply with Rule

26 disclosure requirements, a court must consider:

> (1) the prejudice or surprise of the party against whom the excluded evidence would
> have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to
> which allowing the evidence would disrupt the orderly and efficient trial of the case or
> other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court
> order or discovery obligation.

*Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).  The importance of the evidence is also a very significant consideration.  *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012).  Thus, in deciding whether to exclude evidence, the court must first consider if a party's failure to provide information was "substantially justified" or "harmless" and, even if it was not, whether exclusion of the evidence is appropriate based on consideration of the factors enumerated by the Third Circuit.

## III. DISCUSSION

### A. John Davoli, Sr., Mark Davoli, and Carl Sahlsten

In their declarations attached to Defendants' motion for summary judgment, the Davolis provide information regarding Metro Diner's corporate structure and their lack of operational control over the Metro Diner restaurants.  In his declaration, Sahlsten also provides information regarding Metro Diner's corporate structure.  Additionally, Sahlsten describes several standard Metro Diner policies and operating procedures, including the use of a tip pool to reward Bussers and Hosts.

Plaintiffs move to strike the declarations of the Davolis and Sahlsten on the basis that Defendants failed to disclose their identities and the likely subjects of their discoverable information as required by Rule 26(a) and (e).  Defendants concede that they did not initially disclose these declarants as required by Rule 26(a)(1)(A)(i) and failed to formally supplement their disclosures to later identify them.  Defendants contend, however, that they did not violate the Rule 26 disclosure requirements because they were not required under Rule 26(e)(1)(A) to supplement their disclosures because the identities of the Davolis and Sahlsten and the likelihood that they would have discoverable information had "otherwise been made known" to Plaintiffs.  Alternatively, Defendants argue that, even if they violated Rule 26, the declarations should not

be stricken because the failure to disclose was "harmless."

### 1. Rule 26

Rule 26(e)(1)(A) only requires a party to correct or supplement its disclosures "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "[T]here is no need . . . to submit a supplemental disclosure to include information already revealed . . . through formal discovery." 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049.1 (3d ed. 1993). The record reveals that Defendants had no obligation to supplement their disclosures to identify the Davolis and Sahlsten because their identities and the likely subjects of discoverable information had "otherwise been made known" to Plaintiffs.

From the outset of the litigation, Plaintiffs were aware of the Davolis' identities and named them as Defendants in the litigation. Plaintiffs alleged that the Davolis exercised operational control over the Metro Diner restaurants, including "the wage and hour policies and practices challenged in this action." ECF No. 1 at ¶¶ 11, 13; ECF No. 24 at ¶¶ 12, 13. Thus, Plaintiffs believed that the Davolis possessed discoverable information.

Plaintiffs contend that Defendants violated Rule 26 because they did not make Plaintiffs aware of the likely subjects of discoverable information that the Davolis possessed. Plaintiffs further argue that Defendants actively prevented them from learning about the information the Davolis possessed by refusing to have the Davolis respond to discovery requests on the basis that the Davolis were not proper Defendants in the lawsuit. Repeatedly, however, the Davolis asserted that they were not proper Defendants in the lawsuit because they did not exercise operational control over the Metro Diner restaurants. In doing so, the Davolis provided Plaintiffs with a description of their roles in the Metro Diner restaurants. Thus, Plaintiffs were acutely

aware that a key issue of contention in the lawsuit was whether the Davolis exercised operational control over the Metro Diner restaurants and that the Davolis likely possessed discoverable information on the subject.  Despite this knowledge, Plaintiffs decided not to depose the Davolis—the only two individuals named as Defendants in this action.  Defendants did not violate Rule 26 when they failed to supplement their disclosures to identify John Davoli, Sr. and Mark Davoli and the likelihood that they possessed discoverable information regarding the corporate structure of Metro Diner restaurants because the information had "otherwise been made known" to Plaintiffs.

Similarly, Defendants did not violate Rule 26 when they failed to supplement their disclosures to identify Sahlsten and the likelihood that he possessed discoverable information regarding Metro Diner's corporate structure and policies and procedures because the information had "otherwise been made known" to Plaintiffs.  On June 9, 2017, Plaintiffs became aware that Sahlsten possessed information regarding Metro Diner's organizational structure when Sahlsten responded on behalf of Defendants Metro Diner Management LLC and Metro Services LLC to Plaintiffs' First Set of Interrogatories.  Specifically, Defendants response to Interrogatory Number 1 informed Plaintiffs that "Carl Sahlsten assisted in the identification of responsive documents and providing details on Defendants' organizational structure."  ECF No. 192-4.  A few months later, Defendants provided Plaintiffs with an affidavit from Sahlsten in which he identified himself as the CEO of Metro Diner, described several Metro Diner policies and operating procedures, and discussed the roles of Servers, Bussers, and Hosts at Metro Diner.

Plaintiffs argue that even though they were aware of Sahlsten's interrogatory answers and affidavit, his three-month involvement in the case in 2017 did not provide Plaintiffs with reasonable notice of the discoverable information that he possessed.  Contrary to Plaintiffs'

argument, Plaintiffs sought to depose Sahlsten in September 2017 specifically because they recognized, based on Sahlsten's affidavit, that he possessed discoverable information. Defendants' early identification of Sahlsten complied with their obligation to "timely" identify Sahlsten as an individual likely to have discoverable information. Defendants clearly and unambiguously identified Sahlsten as an individual likely to have discoverable information when they informed Plaintiffs that he was the CEO and knew the details of Metro Diner's organizational structure. Plaintiffs learned from Sahlsten's interrogatory responses and affidavit that Sahlsten likely possessed information on Metro Diner's corporate structure and policies and procedures, including operation of the tip pool—the same topics that Sahlsten addressed in his declaration. After they were unsuccessful at quickly obtaining a deposition of Sahlsten, Plaintiffs abandoned any effort over the next four years to depose Sahlsten, despite knowing his identity and the likely subjects of discoverable information that he possessed. Defendants did not violate Rule 26 when they failed to supplement their disclosures to identify Sahlsten and the likelihood that he possessed discoverable information regarding Metro Diner's corporate structure and policies and procedures because the information had "otherwise been made known" to Plaintiffs.

### 2. Rule 37

Alternatively, even if Defendants had violated Rule 26 by failing to supplement their disclosures to identify the Davolis and Sahlsten, their declarations should not be stricken because the violations were "harmless." Rule 37 prohibits the exclusion of evidence if the failure to provide information was "harmless." Fed. R. Civ. P. 37(c)(1). One type of failure to provide information that is considered "harmless" is "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties." Fed. R. Civ. P. 37, advisory

committee's note to 1993 amendment.  In this case, both parties appear to have inadvertently

failed to exchange Rule 26(a)(1)(A) initial disclosures, perhaps because Defendants' counsel left

their former law firm and opened their present law firm precisely during the time period when

the exchange of initial disclosures was set to occur.  Defendants' inadvertent omission of the

identities of the Davolis and Sahlsten was harmless because, as previously discussed, these

potential witnesses were known to all parties.

Because Defendants did not violate Rule 26, and even if they had, the violations were

harmless, I will deny Plaintiffs' motion to strike the declarations of the Davolis and Sahlsten.

### B. Thirty-Five Current Metro Diner Managers and Servers

In their motion for summary judgment, Plaintiffs present evidence from Fiumano and

Opt-In Plaintiffs to support their FLSA claims that: (1) Defendants improperly paid their Servers

the "tip credit" minimum wage despite requiring Servers to perform non-tipped tasks for more

than 20% of their work hours; and (2) Defendants required Servers to pay 2% of their daily tips

into an illegal tip pool designated for Hosts and Bussers who were not entitled to tips because

they did not customarily or regularly interact with customers.  In opposition to Plaintiffs' motion

for summary judgment, Defendants rely on the declarations of the Thirty-Five Managers and

Servers.  In these declarations, the Thirty-Five Managers and Servers provide evidence to

contradict Plaintiffs' claims, including testimony from the Servers that they spent less than 20%

of their work hours performing non-tipped tasks and testimony that the Bussers and Hosts

customarily and regularly interacted with customers thus entitling them to the tip pool.

Plaintiffs move to strike the declarations of the Thirty-Five Managers and Servers on the

basis that Defendants failed to disclose their identities and the likely subjects of their

discoverable information as required by Rule 26(a) and (e).  Defendants concede that they did

not initially disclose these declarants as required by Rule 26(a)(1)(A)(i) and failed to formally supplement their disclosures to later identify them.  Defendants contend, however, that they did not violate the Rule 26 disclosure requirements because they were not required under Rule 26(e)(1)(A) to supplement their disclosures because they disclosed during discovery that Servers and Managers at any locations where Opt-In Plaintiffs worked had relevant knowledge of the amount of untipped work Opt-In Plaintiffs performed.  Additionally, Defendants argue that, even if their disclosures were insufficient, the declarations should not be excluded because Plaintiffs failed to exercise due diligence during the discovery process by failing to learn the identities of the Servers and Managers that Defendants intended to use as fact witnesses, and by failing to seek to depose any of Defendants' fact witnesses.

### 1. Rule 26

Rule 26(e)(1)(A) only requires a party to correct or supplement its disclosures "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  "[T]here is no need . . . to submit a supplemental disclosure to include information already revealed . . . through formal discovery."  8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049.1 (3d ed. 1993).  "Although the 'otherwise made known' standard of [Rule 26] may be met where disclosure of the information in question is clear and unambiguous, the standard is not satisfied where the disclosure is not sufficiently clear."  *Zoltek*, 71 Fed. Cl. at 167; *see also Pfizer*, 2006 WL 2938723, at *3.  "Alleged 'disclosures' during discovery that are not facially apparent and require the drawing of further 'inferences' are insufficient to meet the requirements of Rule 26."  *Eli Lilly*, 2010 WL 1849913, at * 4.

Defendants admit that they never identified by name any of the Thirty-Five Managers

and Servers.  Defendants argue, however, that they had no obligation to supplement their disclosures because they fulfilled their disclosure requirements by informing Plaintiffs in 2017, in response to the First Set of Interrogatories, that Servers and Managers at any locations where Opt-In Plaintiffs worked had relevant knowledge of the amount of untipped work Opt-In Plaintiffs performed.  Defendants justify their failure to provide the identities of any witnesses as reasonable at the time and in compliance with Rule 26 because they "could not yet determine the parameters of the group of potential witnesses with precision."  ECF No. 203 at 10.  Defendants ignore the fact that under Rule 26(e)(1)(A) they had an ongoing responsibility to supplement their disclosures once they learned of the identities of their witnesses.  Recognizing perhaps that they did not fulfill this ongoing obligation, Defendants try to bolster their argument that they complied with Rule 26(e)(1)(A) by emphasizing that they did provide Plaintiffs with a list of names and contact information for 3,410 persons who worked as Servers at Metro Diner restaurants during the time period for the collective action.  Lastly, they point to an email Defendants' counsel sent to Plaintiffs' counsel in September 2021, informing Plaintiffs that Defendants "may call at trial . . . [a]ny current or former . . . Manager[,] . . . server, host, or busser . . . in a store where one of the opt ins who were deposed in this case worked."  ECF No. 203, Ex. A ¶¶ 8-9.  The problem with all of Defendants' purported "disclosures" is that none of them actually disclosed the identities of any of the Thirty-Five Managers and Servers or the specific subjects of discoverable information they possessed.

A party may only avoid the obligation to supplement its disclosures if the information in question has clearly and unambiguously "otherwise been made known" during the discovery process.  Defendants did not meet the clearly and unambiguously "otherwise been made known" standard when they disclosed, without providing any names, that any of thousands of Servers and

Managers at any location where Opt-In Plaintiffs worked might have discoverable information. *See, e.g.*, *Walsh v. Fusion Japanese Steakhouse, Inc.*, No. 19-00496, 2022 WL 395253, at *13 (W.D. Pa. Feb. 9, 2022) (holding that "point[ing] to a set of documents identifying hundreds of employees with various degrees of legible handwriting, who are frequently identified multiple times, without last names, with nicknames, and/or without a clear indication of job responsibilities" does not meet the clear and unambiguous requirement necessary to avoid the obligation to supplement disclosures). While Defendants argue that they did provide Plaintiffs with the names of 3,410 potential class members, this list was not provided for the purpose of disclosing Defendants' fact witnesses, did not include any information about the subjects of information Defendants' fact witnesses might possess, and did not include the names of fifteen of the Thirty-Five Managers and Servers who eventually provided declarations for Defendants.

In an effort to shift the blame for their failure to disclose the identities of the Thirty-Five Managers and Servers, Defendants argue that Plaintiffs failed to exercise due diligence during discovery because they did not seek to learn the identities of Defendants' fact witnesses or seek to depose them. Rule 26, however, does not place an obligation on Plaintiffs to learn the identities of Defendants' potential witnesses; rather, it places a continuing obligation on Defendants to "supplement or correct" their initial disclosures "in a timely manner." Fed. R. Civ. P. 26(e)(1)(A). Because Defendants did not clearly and unambiguously identify the Thirty-Five Managers and Servers, and the information had not "otherwise been made known," Defendants were required to formally supplement their disclosures. By failing to do so, they violated Rule 26.

### 2. Rule 37

Plaintiffs seeks to strike the declarations of the Thirty-Five Managers and Servers

pursuant to Rule 37 because Defendants violated Rule 26. Defendants do not argue that the failure to provide information was "substantially justified" or "harmless," therefore the court must only consider:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

*Nicholas*, 227 F.3d at 148. The importance of the evidence is also a very significant consideration. *ZF Meritor*, 696 F.3d at 298.

### a. Prejudice or Surprise

The first factor—the prejudice or surprise of the party against whom the excluded evidence would have been admitted—weighs in favor of exclusion. "[P]rejudice exists when the surprised party likely would have conducted discovery differently." *GlobespanVirata, Inc. v. Texas Instruments, Inc.*, No. 03-2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005); *see also Wachtel*, 2005 U.S. Dist. LEXIS 51523, at *23-24. Failure to disclose the identities of the Thirty-Five Managers and Servers has effectively deprived Plaintiffs of the ability to conduct discovery regarding Defendants' fact witnesses whom provide the only factual basis for refuting Plaintiffs' contention that Servers at Metro Diner restaurants spent less than 20% of their work hours on non-tipped tasks. If Plaintiffs had been aware of these witnesses, they likely would have conducted discovery differently. Because they were unaware of these witnesses, Plaintiffs were surprised to learn, after they moved for summary judgment on their claims, that Defendants had a factual basis to dispute Plaintiffs' claims. Plaintiffs certainly were prejudiced when they learned this information after the close of discovery and after the filing of their summary judgment motion. "The prejudice is only intensified by the large number of undisclosed

witnesses." *Wachtel*, 2005 U.S. Dist. LEXIS 51523, at *26.  This factor weighs in favor of exclusion.

### b. Ability to Cure Prejudice

The second factor—the ability of the party to cure the prejudice—weighs against exclusion.  In cases that have not yet been scheduled for trial, it is much easier to cure prejudice without disruption to the court's schedule and the orderly and efficient trial of the case.  Here, the court has neither issued a pretrial scheduling order nor set a trial date.  A readily available means to cure prejudice is to reopen discovery solely as it pertains to the Thirty-Five Managers and Servers and to allow supplemental briefing once this discovery concludes.  Admittedly, due to the large number of undisclosed witnesses, this discovery period will be lengthy.  However, given the lengthy history of the case, reopening discovery for this time period will not be so burdensome to Plaintiffs as to negate the ability of additional discovery to cure the prejudice. This factor weighs against exclusion.

### c. Disruption of the Orderly and Efficient Trial

The third factor—the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case—weighs against exclusion.  When a case has not yet been scheduled for trial, a Rule 26 disclosure violation does not materially disrupt the orderly and efficient trial of the case.  *See Tolerico v. Home Depot*, 205 F.R.D. 169, 177 (M.D. Pa. 2002); *Nippo Corp./Int'l Bridge Corp. v. AMEC Earth & Env't, Inc.*, No. 09-0956, 2011 WL 1196922, at *5 (E.D. Pa. Mar. 30, 2011).  This factor weighs against exclusion because no trial has been scheduled.

### d. Bad Faith or Willfulness

The fourth factor—the bad faith or willfulness in failing to comply with a discovery obligation—weighs against exclusion.  "Bad faith is most often shown through failure [to] provide or disclose information despite repeated requests to do so." *Eli Lilly*, 2010 WL 1849913, at \*10.  Willfulness involves "intentional or self-serving behavior," rather than behavior that is "merely negligent or inadvertent." *Briscoe v. Klaus*, 538 F.3d 252, 262 (3d Cir. 2008) (internal quotation marks omitted).  Plaintiffs never requested the names of the Servers and Managers whom Defendants believed might possess discoverable information and serve as fact witnesses.  There is no evidence that Defendants acted in bad faith because Plaintiffs never requested the disclosure of additional information and Defendants never denied any of their requests.  It is a closer call as to whether Defendants failure to provide the names of the Thirty-Five Managers and Servers was willful or merely negligent or inadvertent.  The Third Circuit has cautioned, however, that exclusion is a sanction that should "not normally . . . be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Konstantopoulos*, 112 F.3d at 719 (quoting *Meyers*, 559 F.2d at 905).  Because Defendants did not engage in willful deception or flagrant disregard of a court order, this factor weighs against exclusion.

### e. Importance of the Evidence

The fifth factor—the importance of the evidence—weighs against exclusion.  The more crucial the evidence is to the case, the less likely a court should exclude it.  *See ZF Meritor*, 696 F.3d at 299-300.  The declarations of the Thirty-Five Managers and Servers are crucial to Defendants' opposition to Plaintiffs' motion for summary judgment.  Defendants rely on these declarations to contradict Plaintiffs' claims that Servers spent more than 20% of their work hours

performing non-tipped tasks and that Bussers and Hosts unlawfully participated in the tip pool.
Without these declarations, Defendants' opposition to Plaintiffs' motion for summary judgment
is significantly weakened.  Due to the importance of the evidence, this factor weighs against
exclusion.

### f. Balancing of the Factors

Although Plaintiffs have suffered prejudice, the factors weigh heavily against exclusion
of the evidence.  I will deny the motion to strike the declarations of the Thirty-Five Managers
and Servers, but I will give Plaintiffs the opportunity to cure the prejudice that has resulted from
Defendants' failure to supplement their Rule 26 disclosures.

## IV. CONCLUSION

I will deny the motion to strike the declarations of John Davoli, Sr., Mark Davoli, and
Carl Sahlsten.  I will also deny the motion to strike the thirty-five current Metro Diner Managers
and Servers.  Because I will deny the motions to strike, the motions for summary judgment are
ready for adjudication.

To cure the prejudice Plaintiffs would suffer at trial as a result of Defendants' failure to
supplement their Rule 26 disclosures regarding the thirty-five Metro Diner Managers and
Servers, I will reopen discovery related solely to the Thirty-Five Managers and Servers.


　　　　__s/ANITA B. BRODY, J.___
　　　　ANITA B. BRODY, J.


COPIES VIA

22