IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH FIUMANO, *et al.*, <br>                 Plaintiffs, <br> v. <br><br> METRO DINER MANAGEMENT LLC, *et al.*, <br>                 Defendants. | Case No.  17-cv-465-AB <br><br> Hon. Anita B. Brody |

**JOINT MOTION AND INCORPORATED MEMORANDUM OF
LAW FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT
INCLUDING ATTORNEYS' FEES, COSTS AND SERVICE AWARD**

Joseph Fiumano ("Named Plaintiff") and 245 Opt-In Plaintiffs (the "Opt-In Plaintiffs") (collectively the "Plaintiffs") and Metro Diner Management, LLC, Metro Services, LLC, and MD Original, LLC ("Defendants") (collectively, the "Parties"), through their undersigned counsel, jointly move the Court for an Order approving the settlement reached in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.[1]  The Parties have negotiated a settlement to resolve this *bona fide* FLSA dispute after six years of motion practice and discovery, the exchange of substantial discovery to inform the Parties' damage calculations and extensive, arm's-length negotiations conducted by counsel well-versed in wage-and-hour litigation.

The Parties submit that the terms of their proposed Settlement Agreement (the "Agreement") are fair, reasonable, and adequate, particularly considering the existence of disputed issues of fact and law with respect to liability and damages, uncertainty as to whether each Plaintiff would obtain a judgment in his or her favor, along with the risks of trial and possible appeals. *See* Settlement Agreement (Exhibit 1).

---

[1] This motion is filed jointly, with the caveat that as to Sections B(iii) and (iv), Defendants do not have independent knowledge of the fees and costs incurred by Plaintiffs, and therefore are not in a position to jointly support these portions of the motion; instead, Defendants do not oppose the relief requested in those sections.

1

**I.     BACKGROUND**

    **A.     Procedural History**

In February 2017, Named Plaintiff Joseph Fiumano filed a lawsuit against Metro Diner, claiming, among other things, that it required Servers to spend more than 20% of their work time on untipped sidework in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. *See* Complaint [Doc. 1].

On April 10, 2018, this Court entered an Order granting Plaintiffs' Motion for FLSA conditional certification and authorizing the issuance of FLSA Notice to the conditionally-certified collective, *see* Apr. 10, 2018 Opinion [Docs. 67-68], after which Plaintiff disseminated a Court-approved notice. During the opt-in period, Plaintiffs' counsel filed consent forms for 256 Opt-In Plaintiffs and, thereafter 15 of these individuals requested to withdraw their claims or had their claims withdrawn by stipulation, leaving 242 participants ("Plaintiffs"). *See* [Docs. 2, 15, 21, 29, 87-88, 91-107, 109-115, 118, 120, 171, 184]. The Parties subsequently engaged in extensive merits discovery, which included written discovery and depositions from multiple Opt-In Plaintiffs, Defendants' production of extensive time and payroll records and other employment data, depositions of multiple management employees and related document productions. *See* [Docs. 122-123, 137, 157, 209, 214, 227-228].

The Parties filed extensive briefing on discovery issues, FLSA certification, final certification, and decertification, Rule 23 class certification, and Summary Judgment, with each Party receiving multiple rulings in its favor. *See* [Docs. 67, 136, 151, 164, 246, 260]. Importantly, on February 7, 2023, this Court denied Defendants' summary judgment motion as to Plaintiffs' untipped work and tip pool claims, Feb. 7, 2023 Order [Docs. 245-246], but, on July 13, 2023, granted reconsideration of this decision and entered summary judgment for Defendants on Plaintiffs' tip pool claim, Jul. 13, 2023 Order [Doc. 259].

Upon receiving the Court's first summary judgment Order, the Parties began to engage in multiple rounds of settlement negotiations through counsel that, by August 11, 2023, had resulted in an agreement on the material terms of a proposed settlement. *See* Declaration of David J. Cohen ("Cohen Dec."), ¶19 (Exhibit 2). The Parties now seek approval of this proposed settlement on behalf of all 242 Named and Opt-In Plaintiffs.

**B.     Legal Background**

As described in this Court's February 7, 2023 Opinion [Doc. 245], the FLSA ordinarily requires employers to pay a minimum hourly wage, which is currently $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Feb. 7, 2023 Opinion, p.12 [Doc. 245]. However, the FLSA allows an employer, under certain circumstances, to use the tips of a "tipped employee" to meet its minimum wage obligations. *Id., citing* 29 U.S.C. § 203(m)(2)(A). Therefore, the FLSA allows employers to pay a "tipped employee" a cash wage of $2.13 per hour provided that the employee's tips make up the difference between the $2.13 cash wage and the current federal minimum wage. *Id.* at p. 13, *citing* 29 U.S.C. § 203(m). The difference between the cash wage and the federal minimum wage is known as the "tip credit." *Id., citing* 29 C.F.R. § 531.56(d).

The DOL recognizes that an employee may be engaged in two occupations for the same employer but may only qualify as a "tipped employee" in one of those occupations. *Id., citing* 29 C.F.R. § 531.56(e) ("Dual Jobs Regulation"). In this situation, the tip credit may only be taken for the employee's hours spent in the occupation for which he qualifies as a "tipped employee." *Id.*

The Dual Jobs regulation is interpreted according to a principle known as the "80/20 Rule." *Id., citing* 20 C.F.R. § 531.56(e) and *Belt v. P.F. Chang's China Bistro, Inc.*, 401 F. Supp. 3d 512, 535 (E.D. Pa. 2019) (interpreting the Dual Jobs regulation and holding that "when an employee spends more than 80 percent of his or her time performing tipped work—and less than twenty percent of his or her time performing untipped related work—the employee is a "tipped employee"

3

for all of his or her hours . . . ." and "[when that] employee spends more than twenty percent of his or her time performing untipped related work, they are no longer a tipped employee during any of the time they spend performing untipped related work."). Under the 80/20 Rule, an employer may never take any tip credit for time an employee spent performing untipped work that is not part of the tipped occupation; *i.e.,* work that is either tip-producing or directly supporting the tip-producing work. *Id.* at p. 14, *citing* 20 C.F.R. § 531.56(f)(1) and *Belt*, 401 F. Supp. 3d at 522. Additionally, an employer may only take a tip credit for time an employee spends performing related, but untipped, duties if the employee spends twenty percent or less of their time performing related duties. *Id., citing Belt*, 401 F. Supp. 3d at 522.

## II.   THE PARTIES' PROPOSED SETTLEMENT

The Parties, with the assistance of counsel, negotiated a gross settlement payment of ▇▇▇▇▇▇ to resolve the claims pled in this action. As outlined in their Agreement, the Parties propose to distribute this sum as follows:

- ▇▇▇▇▇▇ in settlement payments to the 242 Plaintiffs to be distributed pro rata based on the length of their employment term during the relevant period (representing the difference between the tipped minimum wage payments they received and the regular minimum wage payments they claimed for spending up to 40% of their total work time on untipped sidework), with a minimum payment of ▇▇▇▇;

- ▇▇▇▇▇▇ as a service award to Named Plaintiff as compensation for the work he performed to bring and support this case over more than six years;

- approximately ▇▇▇▇▇▇ as an attorney's fee to Plaintiffs' Counsel (17% of the value of their time spent on this case from January 2017 to the present); and

- approximately ▇▇▇▇▇▇ to Plaintiffs' Counsel as a reimbursement for their litigation costs, including all settlement administration costs.

*See* Agreement (Exhibit 1).

4

The ▮▮▮▮▮ (damages plus service award) allocated to the Named and Opt-In Plaintiffs represents a fair and reasonable result because of the uncertainty of determining whether Defendants violated the FLSA, including Defendants' maintenance of extensive evidence it claims contradicts Plaintiffs' allegations of unpaid work, and considering the significant risks, costs and delays associated with continuing the litigation through trial and any appeals Defendants might pursue. Further, the ▮▮▮▮▮ the Parties propose to allocate as damages among the 242 Plaintiffs represents 66% of the maximum value damage calculation performed by Plaintiffs' Counsel based on their most favorable evidence that Metro Diner Servers spent up to 50% of their work time on untipped related sidework – contrasted against Defendants' evidence that the Plaintiffs are collectively owed $0, based on their proof that no Metro Diner Server spent more than 10-20% of their work time on untipped related sidework, so the 80/20 rule has not been violated. *See* Cohen Dec. at ¶20 (Exhibit 2).

The ▮▮▮▮▮ the Parties propose to allocate as attorneys' fees is fair and reasonable, because this figure represents only 17% of the ▮▮▮▮▮ lodestar Plaintiffs' counsel have accumulated by dedicating 2,810.3 hours to their representation of Plaintiffs from January 2017 to present. *Id.* at ¶¶7, 12, 21 (Exhibit 2).

By cashing their settlement checks, the Opt-In Plaintiffs will waive, release, and forever discharge Metro Diner Management, LLC, Metro Services, LLC, and MD Original, LLC and each of their past, present and future owners, directors, officers, managers, subsidiaries, and assigns, from any and all wage and hour claims that were brought, or could have been brought, in this Litigation related to my employment as a Metro Diner Server (including all state and federal claims for unpaid overtime wages, penalties, interest, liquidated damages, attorney's fees, costs, and expenses) from three years before they filed their consent forms to the date of the Settlement Approval Order. Agreement § 4.1 (Exhibit 1).

5

### III. STANDARD FOR FLSA SETTLEMENT APPROVAL

Because the Third Circuit has not yet weighed in on the issue of whether court approval of settlement agreements involving FLSA claims is required, some courts in this Circuit adhere to the FLSA approval process set forth by the Eleventh Circuit in *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *See O'Mara v. Creative Waste Sols., LLC,* 2020 WL 2513571, *3 (E.D. Pa. May 15, 2020). Applying this process, the Court must determine whether the proposed settlement of Plaintiffs' FLSA claims "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *See Mako v. Anastasia Care Servs., LLC*, 2020 WL 919731, *1 (E.D. Pa. Feb. 26, 2020); *Brown v. Progressions Behav. Health Servs., Inc.*, 2017 WL 2986300, *3 (E.D. Pa. July 13, 2017).

A proposed settlement resolves a *bona fide* dispute if its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Xu v. Gu,* 2022 WL 35605, *2 (E.D. Pa. Jan. 4, 2022). "In essence, for a *bona fide* dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the Defendants' intent to reject or actual rejection of that claim when it is presented." *Xu,* 2022 WL 35605 at *2.

"If the Court determines that the settlement concerns a '*bona fide* dispute,' it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." *Hunter v. M-B Companies, Inc.,* 2020 WL 4059898, *2 (E.D. Pa. July 20, 2020).

### IV. THE COURT SHOULD APPROVE THE PARTIES' PROPOSED SETTLEMENT

#### A. The Parties' Settlement Represents The Resolution Of A *Bona Fide* Dispute

Plaintiffs have averred and compiled a factual record demonstrating that they regularly spent significantly more than 20% of their work time performing untipped related sidework. *See*

Plaintiffs' Summary Judgment Motion, Opposition, and Fact Statement (citing sources) [Docs. 185-2, 185-3, 195-3]. Defendants have averred and compiled a factual record demonstrating that Metro Diner Servers regularly spend less than 20% of their work time performing untipped related sidework. *See* Defendants' Summary Judgment Motion, Opposition, and Fact Statement [Docs. 187-2, 196-2, 196-3]. This dispute involves a large number of hotly-contested issues, including: whether Plaintiffs' sidework constitutes tipped or untipped work; whether Plaintiffs' sidework is *de minimis*; whether Plaintiffs' sidework could, as a practical matter, be recorded for payroll purposes; whether Defendants retroactively paid Plaintiffs for instances of extensive sidework; and whether Defendants had actual or constructive knowledge that any plaintiffs were performing excessive amounts of untipped related sidework as Plaintiffs claim. *See* [Docs. 185-2, 185-3, 187-2, 195-3, 196-2, 196-3].

The *bona fide* nature of the Parties' dispute is further demonstrated by the large number of highly-disputed issues in this case and by the many split rulings issued in this case. *See, e.g.,* Orders granting and denying Plaintiffs' Conditional Certification Motion [Docs. 68, 74]; Order granting and denying Plaintiffs' Motion to Compel [Doc. 136]; Order denying FLSA decertification motion and denying R.23 Class Certification Motion [Doc. 151]; Order granting and denying Defendants' Sanctions Motion [Doc. 198]; Order granting and denying Plaintiffs' Motion to Strike [Doc. 227]; Order granting and denying the Parties Cross Motions for Summary Judgment [Doc. 246]; Order granting Defendants' Reconsideration Motion [Doc. 260]. This case also arguably presents an issue ripe for decision by the Third Circuit Court of Appeals: whether an employee works in a tipped occupation is determined by job title alone, or requires a fact-specific inquiry into the employee's duties and activities. *See* Feb. 7, 2023 Memorandum Opinion, p. 11 [Doc. 245].

The *bona fide* nature of the Parties' dispute is also demonstrated by the Parties' Settlement Agreement, in which the Parties acknowledge that Plaintiffs allege that they have performed substantial untipped related work for Defendants' benefit for which they were compensated at the tipped minimum wage rate, while Defendants denies liability on this claim and denies owing damages to Plaintiffs based on the facts and claims they assert. Accordingly, the Parties' settlement represents the resolution of a *bona fide* dispute.

### B. The Settlement Is Fair and Reasonable

District courts in the Third Circuit typically consider the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975), as the basis for evaluating the fairness of a proposed class action settlement. *Xu,* 2022 WL 35605 at *4. These factors include: the complexity, expense, and likely duration of the litigation; the reaction of the class to the settlement; the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; the risks of establishing damages; the risks of maintaining the class action through the trial; the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id., citing Girsh*, 521 F.2d at 157–58. This Court should approve the Parties' proposed settlement because, as discussed below, all of the *Girsh* factors either weigh in favor of approval or do not suggest the Parties' proposed settlement is unfair.

#### i. The settlement as a whole is fair and reasonable

Here, the settlement is clearly fair and reasonable considering all the applicable factors. Defendants have agreed to pay a Gross Settlement Amount of ▮▮▮▮▮▮▮▮. This settlement was negotiated with due consideration given to many issues, including: the complexity, expense, and uncertainties associated with proceeding to trial; the difficulty of proving damage calculations

8

based on untracked time spent on untipped related sidework; and the value of the settlement fund considering the best possible recovery. *See* Cohen Dec. at ¶22 (Exhibit 2). Both Parties have dedicated a significant amount of time, effort, and money to their discovery efforts.

This settlement is not the product of fraud or collusion. The settlement was reached through a months'-long, arm's-length negotiation, involving the exchange of multiple demands and offers on both monetary and non-monetary terms, between capable attorneys with extensive experience in the litigation of class and collective wage and hour claims, including claims relating to claimed off-the-clock work. *See* Cohen Dec. at ¶22 (Exhibit 2). Through these exchanges, and an intensive review of the underlying data, the Parties were ultimately able to narrow the gap between their positions and reach a negotiated settlement. *Id.*

The amount of the settlement is reasonable in relation to the potential recovery. As in all wage-and-hour claims, particularly in the collective action context, the nature and value of recoverable damages can be uncertain. For example, Defendants' calculations in this case provided $0 total damages (based on their proof that no Metro Diner Server spent more than 10-20% of their work time on untipped sidework, while Plaintiffs' damage calculations provided maximum damages of ▇▇▇▇▇▇ based on claims that certain Plaintiffs spent up to 50% of their work time on untipped sidework. *Id.* at ¶20 (Exhibit 2). The settlement negotiated in this case is fair and reasonable because it not only establishes a fund benefitting Plaintiffs that provides 66% of Plaintiffs' maximum damage calculation, but also avoids the possibility that, after a finding of liability in their favor, Plaintiffs might (because of the Parties' credibility, the quality of Defendants' timekeeping data, or any other reason) wind up receiving a $0 judgment based on Defendants' proof. *Id.* at ¶24.

Finally, to ensure a fair and equitable distribution the proposed settlement calls for a minimum payment of ▇▇▇▇▇ per Plaintiff and will provide an average payment of approximately

9

███ per Plaintiff calculated on a *pro rata* basis, based on each Plaintiffs' term of employment. *Id.* at ¶25.

### ii. The proposed service award is fair and reasonable

The Agreement also provides for a ███ Service Award for the Named Plaintiff in recognition of his services to the Class. Factors that courts consider when analyzing incentive awards include: the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the Plaintiffs' personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the Plaintiffs' personal benefit (or lack thereof) purely in her capacity as a member of the class. *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, *3 (E.D. Pa. June 4, 2014). *See Altnor*, 197 F. Supp. 3d at 771 ("the incentive award must be related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit") (internal quotations omitted), *citing Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242, 279 (E.D.N.Y.2009).

Named Plaintiff is entitled to a Service Award, because he accepted financial and reputational risks by stepping forward to commence, join and support this litigation. Named Plaintiff was directly and regularly involved in this litigation, performing tasks such as: producing documents to describe and confirm his claims, assisting with the review of case documents to inform litigation strategy, speaking with putative class members and encouraging their cooperation and assistance in the prosecution of this case, reviewing pleadings for accuracy, providing declarations in support of motions, responding to written discovery requests, appearing for deposition, assisting in preparations for settlement negotiations and reviewing the fairness of Defendants' settlement proposals. *See* Cohen Dec. at ¶26 (Exhibit 2). Further, Named Plaintiff maintained his level of involvement throughout the more than six-year duration of this litigation.

*Id.* Accordingly, the Named Plaintiffs' Service Award represents a fair and reasonable amount in consideration for his effort in this matter and is consistent with similar awards approved in this Circuit. *See Shiptoski v. SMG Grp., LLC*, 2020 WL 13657460, *2 (M.D. Pa. Jan. 16, 2020); *Tavares v. S-L Distrib. Co., Inc.,* 2016 WL 1743268, *9 (M.D. Pa. May 2, 2016) (███ service award each to both named plaintiffs); *Badia v. HomeDeliveryLink, Inc.,* 2015 WL 5666077, *9 (D.N.J. Sept. 25, 2015) (service awards of ███ to all six named plaintiffs); *Creed v. Benco Dental Supply, Co.,* 2013 WL 5276109, *7 (M.D. Pa. Sept. 17, 2013) (███ service award to named plaintiff); *Foster v. Kraft Foods Grp. Inc.,* 2013 WL 440992, *2 (W.D. Pa. Jan. 15, 2013) (approved service awards of ███).

### iii. The proposed attorney's fee is fair and reasonable

Judicial review of attorneys' fees is required "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Wahpoe v. Staffmore LLC,* 2020 WL 5554413, *4 (E.D. Pa. Sept. 16, 2020). *See In re Chickie's & Pete's Wage & Hour Litig.*, 2014 WL 911718, *4 (E.D. Pa. Mar. 7, 2014). Percentage-of-recovery is the prevailing method used by courts in the Third Circuit to assess attorneys' fees in wage-and-hour cases. *Devine v. Ne. Treatment Centers, Inc.,* 2021 WL 4803819, *7 (E.D. Pa. Oct. 14, 2021). The Third Circuit has set forth seven factors for evaluating the appropriateness of an attorneys' fee award under the percentage of recovery method: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Xu,* 2022 WL 35605 at *6 (E.D. Pa. Jan. 4, 2022).

*See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (n. 1) (3d Cir. 2000).[2]

Plaintiff asserts that the fee requested in this case is appropriate under the percentage of recovery method although Plaintiffs' Counsel seek a fee award that lies above the typical range. The size of the fund created (███████) and the number of persons benefitted (245) are not unusually large, but Plaintiffs' recovery is notable in that it represents an amount believed to represent 66% of their maximum damages (applying Plaintiffs' most favorable assumptions). *See* Cohen Dec. at ¶20 (Exhibit 2). Although Plaintiffs have not yet distributed the settlement notice to the entire Collective, Plaintiffs' Counsel have communicated the settlement terms to Named Plaintiff who, in turn, has disseminated this information to multiple Plaintiffs, none of whom have communicated any objection to the proposed settlement. *Id.* at ¶27. The absence of substantial objections by other Plaintiffs supports the proposed distribution. The skill and efficiency of the attorneys involved in this action also supports the proposed distribution. As discussed at length above, the complexity and duration of this litigation both support the proposed distribution. The fact that Plaintiff retained Counsel on a contingent basis to prosecute this action, such that they would have recovered nothing from a losing effort, supports the proposed distribution. *Id.* at ¶18. The amount of time Plaintiffs' Counsel devoted to this case – namely 2,810.3 hours from January 2017 to present, providing a lodestar valued at ███████ – supports the proposed distribution. *Id.* at ¶¶7, 12, 21. Finally, based on their long experience, Plaintiffs' Counsel submit that the fee proposed in this action is commensurate with, if not below, the fee awards typically approved in FLSA collective actions of similar complexity and duration. *Id.* at ¶¶10-13.

---

[2] Courts in this Circuit have held that "fee awards for common fund cases generally range from 20-45% of the fund." *See, e.g., Nwogwugwu v. Spring Meadows at Lansdale, Inc.,* 2017 WL 2215264, *3 (E.D. Pa. May 18, 2017); *Rubbo v. Peoplescout, Inc.,* 2017 WL 2010311, *3 (E.D. Pa. May 11, 2017); *Howard v. Philadelphia Hous. Auth.,* 197 F. Supp. 3d 773, 782 (E.D. Pa. 2016).

The Third Circuit suggests it is also "sensible" for district courts to "'cross-check' the percentage fee award against the 'lodestar' method." *Creed*, 2013 WL 5276109, at *6. "The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." *In re AT & T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Even when used as a cross-check, courts should "explain how the application of a multiplier is justified by the facts of a particular case." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005), *quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 340 (3d Cir. 1998).

As of early September 2023, Plaintiffs' Counsel had spent 2,810.3 hours on this matter which, billed at their typical and customary rates, provides a total lodestar of ▓▓▓▓▓▓▓▓. *See* Cohen Dec. at ¶¶ 7, 12, 21 (Exhibit 2). This total reflects the amount of time Plaintiffs' Counsel spent on a wide array of tasks in this action, including: investigating and drafting the Complaint and Amended Complaint, managing prospective plaintiff outreach efforts and early opt-ins, preparing initial disclosures, drafting the Parties' Rule 26 report, negotiating the Parties' confidentiality agreement and drafting the Parties' protective order motion, litigating Defendants' motion for judgment on the pleadings, litigating Plaintiffs' FLSA conditional certification motion and various issues relating to the scope of the class and notice issues, litigating a motion for protective order and sanctions motion, supervising the notice mailing and opt-in efforts, negotiating and litigating multiple class discovery issues, engaging in extensive class and merits discovery efforts (including taking and defending dozens of depositions and reviewing thousands of pages of documents and data), litigating Defendants' decertification motion and Plaintiffs' Final FLSA Certification and Rule 23 Class Certification motions, litigating Defendants' interlocutory appeal motion, engaging in multiple settlement efforts and mediation sessions, litigating cross-motions for Summary Judgment and related

13

discovery issues, litigating Defendants' summary judgment reconsideration motion, engaging in extended settlement discussions with defense counsel, drafting the Parties' Settlement Agreement, and drafting this joint Motion for settlement approval and all related documents. *Id.* at ¶8.

The ▓▓▓▓ fee proposed in this action will provide Plaintiffs' Counsel with a "negative multiplier" of approximately 0.17, meaning they will only recover 17% of the value of the work they performed through early September 2023, and no additional compensation for any work they perform after this filing. *Id.* at ¶21. Fee requests involving a negative multiplier are generally considered reasonable *per se*. *See In re Wawa, Inc. Data Sec. Litig.*, 2021 WL 3276148, at *13 (E.D. Pa. July 30, 2021); *Taha v. Bucks Cty. Pennsylvania*, 2020 WL 7024238, *8 (E.D. Pa. Nov. 30, 2020) ("Where this calculation results in a 'significant negative multiplier,' it will 'suggest that [plaintiffs'] fee request is reasonable'"); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 389 (E.D. Pa. 2019) ("negative multiplier suggests that Plaintiffs' fee request is reasonable"); *Krimes v. JPMorgan Chase Bank, N.A.*, 2017 WL 2262998, at *10 (E.D. Pa. May 24, 2017).

### iv. The proposed cost recovery is fair and reasonable

Finally, this Settlement Agreement seeks ▓▓▓▓ in costs. It is well-established that "[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action. *Caddick v. Tasty Baking Co.*, 2021 WL 4989587, *9 (E.D. Pa. Oct. 27, 2021), *citing Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, *32 (E.D. Pa. Apr. 21, 2020).

Plaintiffs' Counsel have incurred ▓▓▓▓ in costs relating to this lawsuit between January 2017 and the present on the types of items a paying client would expect to be charged in litigation of this nature. *See* Cohen Dec. at ¶15 (Exhibit 2). Plaintiffs' Counsel paid these expenses

on a contingent basis, risking their recovery on the outcome of this litigation, and have not received any cost payment or reimbursement of any sort throughout the duration of this case. In addition, the Parties' Agreement requires Plaintiffs' counsel to retain a settlement administrator to effectuate the Parties' settlement, including: collecting and managing the data necessary to the settlement distribution, calculating Plaintiffs' individual damage awards and related tax obligations, finalizing and printing the settlement notices, checks, and envelopes, running address searches, completing the settlement mailing, communicating with the Parties' counsel and individual Plaintiffs about the settlement distribution, and preparing and submitting all required tax filings. *Id.* at ¶16. As a result, the Parties have proposed allocating a ▓▓▓▓ expense reimbursement for Plaintiffs' counsel. If the actual settlement administration costs exceed ▓▓▓▓, Plaintiffs will cover any excess cost reimbursement by allocating funds from the proposed attorney's fee. *Id.* A request for full reimbursement of the costs paid to support the litigation of FLSA claims, including all amounts ultimately required to distribute the notice and provide the payments and tax services associated with this settlement, is typically permitted. *See, e.g., Caddick,* 2021 WL 4989587 at *9; *Morgan v. RCL Mgmt., LLC,* 2020 WL 3429444, *5 (E.D. Pa. June 23, 2020); *Stewart v. First Transit, Inc.,* 2019 WL 13043049, *3 (E.D. Pa. Dec. 30, 2019)

    c.    **The Agreement Furthers the FLSA's Implementation In The Workplace**

"The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours." *Lynn's Food Stores, Inc*., 679 F.2d at 1352. Judicial approval of a settlement is necessary in order to ensure that the compromise "furthers implementation of the FLSA in the workplace." *See Mako v. Anastasia Care Servs., LLC,* 2020 WL 919731, *2 (E.D. Pa. Feb. 26, 2020); *Brown v. Progressions Behav. Health Servs., Inc*., 2017 WL 2986300, *3 (E.D. Pa. July 13, 2017). Courts generally find that fair and reasonable FLSA settlements promote the FLSA's purpose so long as they avoid restrictive confidentiality clauses and impermissibly broad

release provisions. *See Mako*, 2020 WL 919731 at *3 ("The agreement contains no confidentiality provision and the settlement is not sealed"); *Brown*, 2017 WL 2986300 at *3 (payments will be made to Class Members on a *pro rata* basis, no opt-outs or objections were submitted, suggesting no fear of retaliation, no confidentiality provision and the settlement is not sealed).

The Parties' proposed Settlement does not contain a confidentiality clause, *see* Settlement Agreement (Exhibit 1), so there is no established sanction for violating any confidentiality provision. *Id. See Waltz*, 2017 WL 2907217, at *3 (finding that narrowly tailored confidentiality clause did not frustrate the purpose of the FLSA where defendant could not sanction Plaintiff for violating it). As a result, the "public-private character" of employee rights under the FLSA" is preserved, and the Agreement allows for the "public, including current, former, or potential employees of Defendant," to assure that employee wages are fair by virtue of public knowledge of the settlement. *Mabry*, 2015 WL 5025810, at *3. Further, the Settlement release clause is not impermissibly broad because it limits the scope of waiver and release provisions to claims "as asserted in this case or that could have been so asserted" to ensure equal bargaining power between the Parties. *See Bettger v. Crossmark, Inc.*, 2015 WL 279754, *8 (M.D. Pa. Jan. 22, 2015). Finally, as favored in this context, the settlement payments will be distributed on a *pro rata* basis. *Brown*, 2017 WL 2986300 at *3. Accordingly, the proposed settlement will adequately further the implementation of the FLSA, so merits this Court's approval.

## V. CONCLUSION

For all the reasons discussed above, the Parties respectfully ask the Court to enter their proposed Order (Exhibit 3) granting the instant Motion and approving their proposed settlement in its entirety.

Respectfully submitted,

| | |
|---|---|
| */s/ David J. Cohen* <br> David J. Cohen, Esquire <br> STEPHAN ZOURAS LLP <br> 604 Spruce Street <br> Philadelphia, PA 19106 | */s/ Kevin D. Johnson* <br> Kevin D. Johnson, Esq <br> JOHNSON JACKSON PLLC <br> 100 N. Tampa St., Suite 2310 <br> Tampa, FL 33602 |
| *Counsel for Plaintiffs* | *Counsel for Defendants* |
| Dated: October 18, 2022 | Dated: October 18, 2022 |